STATE OF MAINE *vs.* ARTHUR W. SANBORN.

Cumberland. .Opinion April 6, 1921.

*One may not by general evidence impeach the competency and credibility of his*
*own witness, but may show by other witnesses, or by direct or re-direct exam-*
*ination, that the facts are otherwise than the witness testified to, for the*
*rule never contemplated that the truth should be shut out and justice*
*perverted. Guilty intent must be shown as coexistent with the*
*overt act.*

A jury in the Superior Court in Cumberland County convicted the respondent
of the commission of the crime of assault and battery. He thereupon brought
the case to this court on three exceptions to instructions defined by the judge
to the jury, and also upon appeal from the denial of a motion for a new trial.

The respondent says first, that on cross examination of himself, the State erro-
neously was permitted to impeach its own witness,—one Jones,—whom it
had previously called. Jones' version of what had happened differed essen-
tially from that of earlier witnesses enjoying like means of knowledge.

That he who calls a witness may not by general evidence impeach his compet-
ency or credibility, if his testimony be disappointing, is a rule long since estab-
lished. But this rule never contemplated that the truth should be shut out
and justice perverted. It does not prevent the showing by other witnesses,
or by the direct or re-direct examination, that the facts are otherwise than
the witness testified to. There is no principle of law or of justice which
prevents one from availing himself of the truth of his case, although the credit
of his own witness may thereby be impeached.

Exception two relates to that portion of the charge relating to the weight to
be given by the jury to the evidence of Jones. if found affected by bias or
prejudice. No error is perceived in the instruction.

The third exception seeks to show that the trial court ruled that, in the event
the respondent raised the issue, and in such event only, the State had the
burden of proving criminal intent. It was incumbent on the State to prove
respondent's guilty intent coexistent with his overt act. Reference to the
complete charge shows that the subject of intent as an ingredient of the
offense charged was fully covered.

The verdict of the jury is abundantly supported by competent evidence.

On exceptions and motion by respondent. The respondent was
indicted in the Superior Court in Cumberland County for assault
and battery upon one Perley C. Bennett. The case was tried with

two other cases against Homer Brooks and Emma King upon the same charge. The respondent was found guilty by the jury, and filed a motion for a new trial which was denied by the presiding Justice, and the case was taken to the Law Court on exceptions to certain rulings by the presiding Justice as to admissibility of evidence, and on an appeal from the refusal to grant a new trial. Exceptions overruled. Motion overruled.

Case stated in the opinion.

*Carroll L. Beedy, and Clement F. Robinson,* for the State.
*Arthur Chapman, and C. E. Guerney,* for the respondent.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

DUNN, J. In 1920, at the September term of the Superior Court in Cumberland County, a jury convicted the respondent of the commission of the crime of assault and battery. The case is now before this court both on exceptions to certain instructions defined by the presiding Justice to the jury and upon appeal from a ruling of that justice denying a motion for a new trial.

There are three exceptions. The first sets out that the State, in cross-examining the respondent himself, erroneously was permitted to impeach its own witness, one Jones,—prejudicially to the prisoner's rights. Jones was present at the time and place of the alleged crime. The prosecution called him to the stand without previous interview. His version of what had happened differed essentially from that of earlier witnesses enjoying like means of knowledge. Had it been believed, his story would have tended to destruction of the State's contention.

That he who calls a witness may not by general evidence impeach his competency or credibility, if his testimony be disappointing, is a rule long since established. *Morrell* v. *Kimball,* 1 Maine, 322; *Gooch* v. *Bryant,* 13 Maine, 386; *State* v. *Knight,* 43 Maine, 11. But this rule never contemplated that the truth should be shut out and justice perverted. It does not prevent the showing by other witnesses or by the direct or re-direct examination, that the facts are otherwise than the witness testified to. *Morrell* v. *Kimball,* supra; *Brown* v. *Osgood,* 25 Maine, 505; *Hall* v. *Houghton,* 37 Maine, 411; *State* v. *Knight,* supra. Substantive law extends to every litigant an oppor-

tunity to make proof of the integrity of his cause.  Quoting and acknowledging Mr. Justice Weston—writing in the first volume of our judicial reports, almost exactly an hundred years ago,—"There is no principle of law or of justice which prevents the party from availing himself of the truth of his case, although the credit of his own witness may thereby be impeached."  *Morrell* v. *Kimball*, 1 Maine, 322-324.    Broadly speaking, by introducing a witness, a party avouches his fitness and credibleness.  But it would be an inexpedient rule, aimed to strangle justice, which, if one called a witness without knowing him to be adverse, would deny him privilege,—hostility discovered,—of making that fact known.  Or which would prevent him pointing out, if the situation so developed, that the witness heard not because he would not hear, or that he saw not because he would not see, or that from the same objective fact he had gathered subjective impression at variance in important particulars from those drawn by others; or that he heard but did not understand rightly, or that interest warped his judgment.  The opposite side, within reasonable bounds, may hurl general evidence at the character of the witness on the subject of whether he be trustworthy of belief.  His own side may not.  The limitation of the rule goes no further.

In this case the State undertook to show that, by bias or by interest, the witness Jones, whom it had produced, was partial to the respondent's side; that, after testifying, and during the night recess of the court, Jones and respondent engaged in conversation on the public street at considerable length.  These things the State sought to do, not out of the mouth of Jones himself (as it might have done), but by interrogation of the respondent.  The evidence elicited was collateral, and not an actual impeachment.  It involved, in the terse phrase of Prof. Wigmore, "nothing disgraceful or destroying to character, and is hardly worth considering."  Wigmore on Evidence, Section 899.

Exception numbered two is to that portion of the charge of the Judge regarding the proposition of the weight to be given by the jury to the evidence of Jones, if found affected by bias or by prejudice. No error is perceived in the instruction.

The third exception seeks to show that the trial court charged the jury that, in the event respondent raised the issue—and in such event only—the State had the burden of proving a criminal intent on his part.  An unqualified instruction of such tenor would constitute

reversible error.   Reference to the complete charge shows that the subject of intent as an ingredient of the offense was fully covered. Fairly read, in the light of the full charge, the excerpt relied on in the exception is not wanting.   The Judge, who before had repeatedly defined intent as related to crime, and had said that such intent was often presumed or inferred, then stated that there might be occasion for the jury to inquire into the question of a criminal intent. Continuing, he said, among other things:

"And when the defense raises the question and offers an explanation which, if believed and if true, would deprive the act of its criminal character, by reason of the absence of the intent  .  .  .  .   when that issue is raised  .  .  .  .   it is your duty to find on the evidence, and after canvassing the evidence you must be satisfied beyond a reasonable doubt that the intent did in fact exist."

An assault and battery is committed by carrying into effect an unlawful attempt to strike, hit, touch, or do any violence to another, however small, in a wanton, wilful, angry or insulting manner, having an intention and ability to do violence to such other.   R. S., Chap. 120, Sec. 26.   It is obvious that the crime would not be committed if, at the time of doing the act, the mind of the  doer were innocent. Therefore, it was incumbent on the State to prove respondent's guilty intent coexistent with his overt act.   *State* v. *Carver*, 89 Maine, 74.   A guilty intention may be inferred as a fact by the triers of fact from the act itself.   And as it may be thus inferred, so the circumstances which attended the doing of the act may show its absence. The general rule in a case of assault and battery is that, if it be proved that the accused committed the unlawful act laid against him, it will be presumed from his violent conduct, and the attending circumstances, and the outward demonstration, that the act was done with a criminal intention; and it will be left for the accused to rebut this presumption.   *Luttermann* v. *Romey*, 143 Iowa, 233, 121 N. W., 1040; *Sumner* v. *Kinney*, (Texas), 136 S. W., 1192.   In instructing the jury the Judge, in substance, so said.

The several exceptions are unavailing.   The verdict is abundantly supported by competent evidence.

*Exceptions overruled.*
*Motion overruled.*