STATE
*vs.*
ANTHONY CUCCINELLO

Knox.    Opinion, June 2, 1957.

*Frank Harding,*
*Curtis N. Payson,* for plaintiff.

*Domenic P. Cuccinello,*
*Harold H. Rubin,*
*Frederick A. Sherwood,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

WILLIAMSON, C. J. On exceptions. The respondent, tried on an indictment for assault with a dangerous weapon with intent to kill, was convicted by a jury of assault and battery found by the presiding justice to be of a high and aggravated nature. R. S., Chap. 130, Sections 6 and 21.

The bill of exceptions does not meet the minimum requirements of acceptable practice. The bill reads:

"Exceptions are here now listed;

(1) On page 73 of transcript which is contrary to facts or law."

The remaining seven exceptions are identical, except for a change in the reference to the page of the transcript.

Nothing more is told of the claims of error. The long standing rule was again stated and reaffirmed in *Me. Potato Growers, Inc.* v. *H. Sacks & Sons,* 152 Me. 204, at p. 205, 126 A. (2nd) 919. "The bill must be strong enough to stand alone." See also *Bradford* v. *Davis,* 143 Me. 124, 56 A. (2nd) 68; *Jones V. Jones,* 101 Me. 447, 64 A. 815; "Some Suggestions on Taking a Case to the Law Court" by Justice, later Chief Justice, Merrill, 40 Maine State Bar Association 175, 188. The exceptions are patently insufficient, are not properly before us, and so must be overruled.

We have, however, in this instance gone beyond the bill of exceptions to the record and examined the case fully and completely on the merits as if the points raised by the respondent were plainly stated in the bill. We find no error in the exceptions and accordingly the judgment below must stand.

The facts in brief which the jury could have found are: About 1:30 on a morning in October 1955 the respondent armed with a loaded revolver left his home and spoke with the driver of the Pooler car parked nearby. In the car were two young men, Pooler and Firkins, and two young women. The respondent demanded the keys, license and registration of the car. When asked by what authority he did so, he fired a shot into the ground and stated, "That is my authority." The young men then obeyed his order to leave the car and to hold their hands over their heads. The respondent flashed his light into the car and again made a demand for the keys, which were again refused.

He reached into the car with the revolver in his right hand. When the keys were refused, he fired the revolver seriously wounding Pooler, standing outside the car with his hands over his head as he had been ordered. The respondent then went around the car, took the keys and fled. On reaching home he telephoned the police and informed them of the shooting.

The jury heard the occupants of the car, members of the police force, the respondent, and other witnesses. The contention of the respondent is that the shooting was accidental, and thus an intention to commit a criminal act was totally lacking.

The respondent, as we have noted, was charged with assault with a dangerous weapon with intent to kill. R. S. Chap. 130, Sec. 6. The jury, however, found him guilty of the less serious crime of assault and battery under R. S. Chap. 130, Sec. 21, reading:

"Whoever unlawfully attempts to strike, hit, touch or do any violence to another however small, in a wanton, willful, angry or insulting manner, having an intention and existing ability to do some violence to such person, is guilty of an assault; and if such attempt is carried into effect, he is guilty of an assault and battery. Any person convicted of either offense, when it is not of a high and aggravated nature, shall be punished by a fine of not more than $100 or by imprisonment for not more than 6 months, or by both such fine and imprisonment; and when the offense is of a high and aggravated nature, the person convicted of either offense shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 5 years, when no other punishment is prescribed."

The exceptions relate in their entirety to rulings upon evidence. There were no exceptions taken to the charge. The respondent's motion for a new trial was denied by the presiding justice, and no appeal was taken therefrom to this court.

The jury did not find the respondent had an intent to kill. They could find, as they did, an assault by the respondent in ordering Pooler at the point of a loaded gun to leave his car and stand with his hands over his head, in the course of which the shooting (or battery) occurred. The physical injury to Pooler may have been unintentional, but the fact remains that the shooting occurred during an intended assault. The respondent does not escape criminal responsibility for the reason that he fired accidentally, or may have so fired, the shot wounding Pooler.

### FIRST EXCEPTION

On direct examination by the State one of the young women was asked, "Did you . . . lose something when you got . . .?" Objection was taken on the ground it was leading. It developed the witness lost a belt, of which she said, ". . .

when I got out of the car it must have fallen off." No possible harm could have come to the respondent from the question or answer of the witness.

### SECOND EXCEPTION

One of the young women, a State's witness, was asked on cross examination:

"Q Did this man say anything up to this point by way of making or way of threatening you harm, or threatening to harm anybody at that point?

Mr. HARDING: That is just as objectionable.

Q I mean, by his words, to make threats." The cross-examiner requested a "yes" or "no" answer.

\* \* \* \* \* \* \* \* \*

"THE COURT: I am excluding it because you are asking a question in the form of an opinion and a conclusion on her part. You are not asking her for the words or language that was used that may or may not be threats, which would be for the Jury to decide whether that language as used was of a threatening nature. You are asking the witness to conclude as to whether the language, without describing what was, what that language was, as to whether or not that language was of a threatening nature."

The attorney for the respondent then said, "In view of her testimony, what she has already said, I was doing that in an effort to save time, but I will again try." The record discloses that the witness was given every chance to testify in detail about the entire occurrence.

### THIRD EXCEPTION

On cross-examination of Firkins, the young man in the car with Pooler, we find the following question and answer:

> "Q  And this is the first time that you have made
> the statement that you heard Cucinnello say:
> 'Hand over the keys or I will shoot?'
>
> A  I don't recall whether I made it or not be-
> fore."

On redirect examination by the State, the witness could not recall whether in the municipal court hearing anybody asked him anything in regard to the statement, "Hand over the keys or I will shoot." He then admitted signing a statement for the officers.

We come now to the manner in which exception was taken. Counsel for the State said: "Like to use that statement to refresh your recollection as to what you told the officers?" The court permitted the witness to refresh his memory from the paper. We find nothing objectionable in this procedure. The critical question in the fourth exception followed the opportunity given to the witness to refresh his memory.

### FOURTH EXCEPTION

The witness Firkins was asked, on direct examination by the State, "Now, I will ask you if you do recall ever making the statement to anyone that Cucinello said: 'Hand over the keys or I will shoot?" An objection to the question was overruled and the witness answered, "Yes, according to my statement I did made that comment." In connection with this exception it should be noted that on cross-examination earlier by respondent's counsel, Firkins was asked:

> "Q  And at the time you testified in the prelimi-
> nary hearing, you didn't say then that Cuci-
> nello made a statement: 'If you don't hand
> over the keys I will shoot,' did you?
>
> A  I don't recall at this moment whether I made
> that statement or not.
>
> Q  You think you made it?
>
> A  I might have made it.

Q   And you might not have made it? A   Yes."

We find nothing objectionable in the ruling. It was part of a test of witness' recollection, commenced on cross-examination.

### FIFTH EXCEPTION

In the absence of the jury the respondent offered to prove certain incidents at his home prior to the present case to establish that he had a sound reason for carrying a gun for purposes of protection. As the respondent's counsel said, "I think there is a big difference with a man who leaves with a gun and had no reason to do it, had no reason to be concerned as opposed to one who did have cause to be concerned with the safety of himself and his family. I offer it for that purpose only ... MR. RUBIN: The testimony of Chief Thompson was that, that is in this case on this point, that he heard a noise and left the house as a result of hearing that noise, went out as a result of that noise. He testified to that. THE COURT: I will exclude it for the present."

At a later period of the trial the justice pointed out that similar testimony had been admitted and the testimony in question of the witness taken in chambers was read in open court to the jury with no objection whatsoever by the respondent's attorney. It sufficiently appears in the absence of objection that the respondent's attorney agreed to have the evidence read by the reporter and not given in person by the witness. Accordingly nothing remains of the fifth exception.

The sixth, seventh, and eighth exceptions arose on cross-examination of the respondent.

### SIXTH EXCEPTION

"Q   Just what authority did you (the respondent)
have to be there (at the scene of the incident)
at the time?

MR. RUBIN: I object. This has been gone over. I believe he asked that question yesterday.

MR. HARDING: I haven't had a satisfactory answer to it.

MR. RUBIN: I think this witness gave the best answer he could.

THE COURT: Other than the fact we have been over it, you have any other objection?

MR. RUBIN: No, Your Honor."

There is no merit in the exception. It involves no more than a repetition of the questioning of a witness.

### SEVENTH EXCEPTION

"Q When did you remember you reached in twice instead of once?"

There was no error in permitting the witness to answer.

"A I have always remembered."

### EIGHTH EXCEPTION

"Q Since the 9th day of October until the present time you (the respondent) have never tried to talk to the police to tell them it was an accident?

MR. RUBIN: I object.

THE COURT: Reason?

MR. RUBIN: My brother knows this man has been represented by counsel—the matter has been in contest—and there would be no reason or cause. Certainly this man wouldn't talk to the police.

THE COURT: That your only objection?

MR. RUBIN: The question is improper, Your Honor, as putting the man in the posi-

tion of saying he didn't do something and he knows and we know he wouldn't be expected to do anything of that nature.

THE COURT: I think that is more or less common knowledge and the Jury would know that as well as you and I or anyone else. I will permit the question."

The respondent answered "no."

The State was entitled to inquire what action the respondent had taken consistent or inconsistent with the defense offered by him.

The exceptions, considered on their merits, disclose no error at trial.

The jury, under the instructions of the justice permitting such a verdict among others, found the respondent guilty of assault and battery. The presiding justice, holding the offense was of a "high and aggravated nature," sentenced the respondent accordingly.

The respondent in argument urges the statute is unconstitutional insofar as it permits the presiding justice to determine the gravity of the offense. The validity of the statute and of the procedure here followed has been definitely settled. See *Rell* v. *State*, 136 Me. 322, 9 A. (2nd) 129, and *State* v. *McKrackern*, 141 Me. 194, 41 A. (2nd) 817.

The entry will be

*Exceptions overruled.*
*Judgment for State.*