**Elmer C. HUTCHINS**

v.

**STATE of Maine et al.**

Supreme Judicial Court of Maine.

May 28, 1970.

Gaston M. Dumais, Lewiston, for plaintiff.

Garth K. Chandler, Asst. Atty. Gen., Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, WEATHERBEE and POMEROY, JJ.

POMEROY, Justice.

Upon his arraignment on two indictments, one alleging assault on a Mr. Frank Rollins and the other alleging an assault on Mrs. Rollins, the Petitioner entered a plea of guilty to both indictments in the Superior Court of Franklin County on March 25, 1965.

Following the entry of the guilty pleas, the Court heard witnesses concerning circumstances surrounding the commission of the offenses which occasioned the indictments. The Court then found both assaults were of a high and aggravated nature. The Petitioner was thereupon sentenced to serve not less than 2½ nor more than 5 years in each case, the sentences to run consecutively.

On February 9, 1966, a post-conviction petition for habeas corpus was filed, seeking to attack the judgments entered April 1, 1965. This petition was denied after hearing. No appeal from such denial was ever perfected.

On July 8, 1968, a second post-conviction habeas corpus petition was filed.

On July 30, 1968, the State filed a Motion to Dismiss the petition, alleging as grounds therefor that the petition raised no new grounds for relief which were not adjudicated in the prior proceedings and which could not have been raised in the prior proceedings.

The State's Motion to Dismiss was granted. This appeal seasonably followed the granting of such Motion.

The Petitioner designed as the Contents of the Record on Appeal: (1) All plead-

ings in the case; (2) a copy of the proceedings in Franklin County Superior Court, March 25, 1965, and April 1, 1965, and (3) the indictments in Cases #1116 and #1117, Franklin County.

At oral argument counsel agreed the record should be supplemented by adding thereto the Petition for Habeas Corpus of February 9, 1966, together with the Opinion and Order thereon, dated June 23, 1966. The Single Justice from whom this appeal was taken was informed of the proposed supplemental record and has assented thereto.[1]

The petition with which we are here concerned complains that the Petitioner was not informed of his right to remain silent and his right to an attorney following his arrest.

Complaint is also made that the statute under which Petitioner was convicted is unconstitutional because it left to the Court the determination of whether or not the assault was of a high and aggravated nature, and that at the time of the entry of the guilty plea the Court failed to make inquiry to satisfy himself that the defendant, in fact, committed the crime charged. Finally, the Petitioner says his attorney was incompetent.

The Presiding Justice, in granting the State's Motion to Dismiss the Petition, observed:

"In the posture in which I find this case, the present petition raises no single issue of law which is new. No single issue of fact is properly raised. All Petitioner's present grievances were adjudicated against him in Hutchins v. State of Maine, Franklin County Superior Court, Civil Docket No. 1781, in said Court."

The only allegation now made which was not included in the prior petition is alleged incompetence of counsel. No recitation of facts supporting this allegation is any place found in the petition. All that is said is that the Petitioner has now become learned in the criminal law, having studied while in State's prison and now realizes his counsel was incompetent.

By its terms 14 M.R.S.A. § 5507 requires that all grounds for relief claimed by the Petitioner under the remedy of habeas corpus must be raised in his original or amended petition and any grounds not so raised are waived unless the State or Federal Constitution otherwise requires or unless the Court, considering a subsequent petition, finds grounds asserted therein which could not reasonably have been raised in the original or amended petition.

In his petition of February 9, 1966, his principal complaint was that when he was arrested the Sheriff:

" * * * never advised him of his right to a lawyer, never told him that he didn't have to say anything if he didn't want to, and never told him that if he did say anything that it could be used against him in a Court of Law."

In his memorandum filed with the Court after the hearing on the petition of February 9, 1966, he alleged:

" * * * he was coerced and threatened by deputy sheriffs to compel him to talk or confess but that he said and told them nothing. By this treatment he was put in fear and later plead guilty when he would not have otherwise done so."

Of this allegation, the then Presiding Justice in his Opinion of June 23, 1966, said:

"First, his post-conviction petition, even though it did allege specific threats

1. The same Single Justice who decided the Petition of February 9, 1966, also heard and decided the petition from which this appeal was taken.

by the officers shortly after his arrest and prior to his indictment and subsequent court arraignment, did not raise any such coercive effect on his guilty plea. This is the first time that any such suggestion is made that the alleged threats induced him to enter a plea of guilty to the charge. His original complaint was grounded on the theory that it was error as a matter of law for the officers not to advise him of his rights to counsel and to keep silent and that such violation of his constitutional rights 'ipso facto' voided all subsequent proceedings.

"Secondly, at no time did Hutchins claim, prior to the filing of this letter brief, that he notified his counsel of such inducement, fear or coercion as he now puts forward. The records are silent as to any such suggestion on his part to the presiding Justice at his arraignment or during the hearing on determination of the seriousness of the offense, nor were any appeal proceedings taken to correct what the petitioner knew then if his present allegations are true. Present at the hearing upon the within petition, Hutchins did not offer any evidence whatsoever regarding the matter. To this day, such alleged inducement lies solely within his unsupported self serving assertion that such is so."

We have carefully reviewed the entire record of the proceedings at the time of arraignment and at the time of sentencing. We find from the record the Petitioner was represented by counsel whom he had chosen and in whom at that time he expressed great confidence. The then Presiding Justice, with commendable concern for the rights of Petitioner, repeatedly explained the defendant's rights to him in the presence of his counsel.

After the guilty plea was entered to each of the two indictments, hearing was had on the question as to the gravity of the assaults. This was in accordance with the practice then in effect. See: State v. McKrackern, 141 Me. 194, 41 A.2d 817; State v. Bey, 161 Me. 23, 206 A.2d 413.

Both victims testified at length concerning all the details of the assault. The Petitioner himself took the stand and described in great detail the events which brought about his conviction. Both Mr. and Mrs. Rollins, the victims of the assault, testified they were driving their automobile near their home in the early morning hours when they came upon the Petitioner standing in the highway holding a gun in his hand. The Petitioner, they informed the Court, came to the door of the car and said: "I have a gun." He then showed the gun and a short conversation ensued during which Petitioner said to Mr. Rollins: "I have been uptown. I broke into a store and I have got a gun. It has got 9 shots in it and I can put 8 of them into you. Take off. Take off."

The Rollinses both testified that they started walking up the road away from the car when they heard a shot fired and both started to run, at which time they heard a second shot and, in Mr. Rollins' words: "I could hear the lead zing. That is what I heard."

They then ran behind a snowbank and heard a third shot and heard the whine of the bullet.

The Petitioner himself testified that he ordered the Rollinses out of their car because he wanted their car for his own use. In his words:

"Well, like I said, I mean I wanted the car and after they left and went by me I fired the first shot to get them moving faster, and I mean—I don't think you will believe it, but the second shot was fired by accident, I don't know how it happened, the gun just went off. And the third shot I fired straight up in the air

because I didn't want to come anywheres near them.

Q. So this was all done because you wanted a car, is that right?

A. Yes."

It is true intent to do harm is an essential element in all prosecutions for assault. State v. Carver, 89 Me. 74, 35 A. 1030.

The Petitioner himself admits he deliberately fired two of the three shots to make the assault victims move along faster so that he could take their car from their possession. Although he says the third shot was fired accidentally, the intention to commit an assault was obvious not only from the Petitioner's own statement but from the circumstances as well.

The guilty intention in assault may be inferred from the action. State v. Sanborn, 120 Me. 170, 113 A. 54; State v. Rand, 156 Me. 81, 161 A.2d 852.

The assault being intended, the defendant could not escape criminal responsibility for reason that the shot may have been fired accidentally. State v. Cuccinello, 152 Me. 431, 133 A.2d 889.

Even though M.R.Crim.P. did not become effective until eight months after these pleas were taken, the Presiding Justice conducted the arraignment in a manner entirely agreeable to that rule.

In the Petition which is here on appeal, Hutchins says:

"Petitioner wanted also to tell the Honorable Harold Rubin, Presiding Justice, at his *trial* about this but when the aforementioned Justice asked petitioner if he had any complaints and the petitioner replied, 'yes,' the aforementioned Justice *kept right on talking* and petitioner had *no chance* to *say anything at all.*"

The record of the proceedings in the Superior Court in Franklin County had at the time of Petitioner's arraignment and plea and which record is made a part of the record of this case, has been examined with care. The complaint here registered by Petitioner is baseless. Contrary to what Petitioner here says, the record discloses that he was asked by the Court several times if he wished to make a statement and each time he replied that he did not. The record reveals this colloquy took place between Petitioner and the Court at one point:

"THE COURT: Just a moment. You know what a guilty plea means, Mr. Hutchins?

THE RESPONDENT: Yes, it means I'm admitting what I done.

BY THE COURT:

Q And do you admit this charge that was read to you, that of an assault?

A Yes.

Q Is that your free and voluntary admission?

A Yes.

Q Have you received any promises, or pressures, one way or another to do this, to admit this?

A No.

Q Have you been threatened or coerced by anyone?

A No.

Q That has resulted in your doing this?

A No.

Q  And you honestly say that this is your free act, voluntarily done, without any mental reservation whatsoever?

A  Yes."

██ State v. Ferris, Me., 249 A.2d 523, was decided January 24, 1969. It overruled those many cases which had prior to that time held that the Presiding Justice may make a determination that an assault and battery was of a high and aggravated nature. However, the Court in that case declared, "The holdings in this case are not retroactive. They do not affect those persons whose trials had commenced prior to the certification of this opinion."

██ We find absolutely nothing in the record even faintly suggestive that Petitioner's counsel was at all deficient in his duty to protect the rights of his client. There is no merit to this appeal.

The entry must be, therefore,

Appeal denied.

DUFRESNE, J., did not sit.