STATE of Maine

v.

Herbert L. WORREY, Jr.

Supreme Judicial Court of Maine.

June 28, 1974.

William S. Broderick, Asst. County Atty., Alfred, Robert Moore, Third Year law student on the brief, for State.

Franklin F. Stearns, Jr., Portland, Dwight A. Fifield, Portland, on the brief, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

In the fall of 1972 the Defendant was indicted by a York County grand jury for a violation of 17 M.R.S.A. § 3151.[1] In late October of that year a jury sitting in Superior Court found the Defendant to be guilty of statutory rape.[2] From that judgment the Defendant has appealed to this Court. We deny his appeal.

The Defendant's brief raises three issues for our consideration, each of which will be mentioned in turn.

1. *The sufficiency of the evidence to support the conviction*

 Initially, the Defendant asserts that the verdict of guilty is not supported by sufficient evidence to allow it to stand. This ground on appeal has been correctly preserved by the Defendant's motion for judgment of acquittal at the close of all the evidence. M.R.Crim.P., Rule 29(a); *e. g.*, State v. Sawyer, Me., 314 A.2d 830, 832 (1974). However, a review of the evidence demonstrates there is no basis to the Defendant's claim.

The jury heard testimony to the effect that the Defendant, although divorced from his first wife, Mrs. Betty Worrey, was living with her sporadically in the spring of 1972. On a Friday evening in late May, 1972 Julie Worrey, the 13-year-old daughter of the Defendant and Betty Worrey, attended a concert with a girl friend. The two girls came home and went to bed in separate beds in Julie's bedroom. Meanwhile Julie's parents had gone to a friend's house where extensive drinking took place. They arrived home very early on Saturday morning.

Julie's mother testified that as soon as she went to bed in her bedroom the Defendant seized her and said he was going to have sexual intercourse with Julie. He threatened to kill the mother if she interfered. Mr. Worrey, physically much larger than his ex-wife, forced her to go into Julie's bedroom. He woke up his daughter and told her to come into the other room. The girl's mother told Julie to run, but she stumbled and fell and could not get away. The Defendant took both mother and daughter back to the mother's bedroom forcibly.

---

1. "Whoever ravishes and carnally knows any female who has attained her 14th birthday, by force and against her will, *or unlawfully and carnally knows and abuses a female child who has not attained her 14th birthday*, shall be punished by imprisonment for any term of years." (Emphasis added.)

2. The indictment reads as follows:
 "That Herbert L. Worrey, Jr., on or about the twenty-first day of May, 1972, in the Town of Wells, County of York, and State of Maine, on one Julie Worrey, a female child who had not attained her fourteenth birthday, to wit, of the age of thirteen (13) years, feloniously did make an assault, and her, the said Julie Worrey, then and there by force and against her will feloniously did ravish and carnally know."

Following the testimony the presiding Justice, with the agreement of both counsel, stated that he would instruct only on statutory rape under 17 M.R.S.A. § 3151. He treated the language "by force and against her will" as surplusage and irrelevant for purposes of statutory rape. We also view the charge as one of statutory rape of a female under the age of 14 and not as rape by force and without consent.

She said he told both females to lie on the bed and threatened them with death if they disobeyed. The Defendant, now nude, placed himself on top of his daughter with his arm around her mother's neck. Julie testified that her father "forced himself" into her as he held down her mother. Both females were crying and trying to escape. According to Julie, her father performed two acts of sexual intercourse during this episode. When the father finally left the scene, the girl's mother noted that she saw blood and semen on the bed sheet.

The father then announced that he was going to run and leave the state. Julie went back to her room and put on her clothes. Still crying, she then heard a loud bang. Her mother yelled to Julie and her friend and told them to "get out the window onto the roof".

Mrs. Worrey testified that she pulled a loaded gun from her drawer in her room and shot the Defendant in the back as he combed his hair. He fell to his knees, and his ex-wife tried to shoot again, but the gun would not fire. She said the Defendant then arose and pursued her, getting as far as the kitchen where he collapsed near the refrigerator. Mrs. Worrey then proceeded to call the police.

Mrs. Worrey said the rape was not reported to the police until about two months had passed because of her reluctance to bring the sordid incident to the public's attention. However, due to Julie's complaints about vaginal bleeding, Mrs. Worrey sent her daughter to a doctor two days after the incident. He testified that his examination indicated that Julie had displayed "black and blue" marks and small tears of the posterior half of the hymenal ring.

Julie's girl friend testified that Mr. and Mrs. Worrey woke the girls and asked Julie to leave her bedroom. The friend heard Julie screaming "No, don't, daddy, don't" and said that Julie was crying when she came back into the room where the two girls were staying.

The Defendant testified at the trial and denied all aspects of the alleged rape incident. He explicitly denied ever going into Julie's bedroom that night and having sexual intercourse with his daughter. He said that the shooting took place in the kitchen, not in the bedroom, and that Mrs. Worrey had shot him after they had quarrelled because he had announced his intention to leave her and return to his present wife.

The Wells police chief testified for the prosecution in rebuttal. He came to the scene of the shooting at about 4 a. m. and found a small pool of blood near the refrigerator, a large pool on the bedroom floor, and a spent .22 cal. cartridge on that floor. No other bullets were found, either used or unused, in the entire apartment. Mrs. Worrey had a .22 cal. derringer in her hand and admitted shooting Worrey, the Chief testified. Betty Worrey was arrested for the shooting of Mr. Worrey but the charges were not prosecuted by the State.

The defense suggests that the entire prosecution story is incredible and concocted because two months elapsed before any word of the rape was reported to the authorities. The defense also claims that the rape allegation emerged only when Mrs. Worrey needed a defense to her charge of shooting Mr. Worrey. The prosecution asserts that embarrassment, social stigma, and other unpleasant factors could easily account for the delay.

■■ In judging the sufficiency of the evidence we do not sit to retry the case and substitute our impressions of the facts for those of the jurors. Rather, we must determine if the jury was warranted in finding for the State in this case. *E. g.,* State v. Northup, Me., 318 A.2d 489 (1974). Leaving the resolving of weight and credibility of witnesses to the jury, we must ascertain if there was sufficient evidence presented to justify the verdict of guilty. We are fully satisfied that there was.

The mere fact that two months passed by before any mention of the rape reached the police does not negate the jury's verdict. Of course, that fact was proper for the jury's consideration of weight and credibility. We take judicial notice of the fact that many rapes go unreported due to the social stigma attached to the victim of such a crime. Much of the testimony of the Defendant contradicted that of the alleged victim, her girl friend, and mother. The prosecution presented evidence which, if believed, would sustain a conviction for statutory rape. The jurors obviously believed the prosecution witnesses and not the Defendant.

The Defendant relies in his brief on State v. Field, 157 Me. 71, 170 A.2d 167 (1961). The rape conviction in *Field* was overturned because the uncorroborated testimony of the victim failed to disclose that force was used upon her as required under the forcible rape statute. In contrast, the present case contains believable, corroborating evidence of the victim's assertions, including medical testimony.[3] Furthermore, force is not an element in statutory rape and thus *Field* has no persuasive bearing on this case.

2. *The refusal of the presiding Justice to strike certain testimony as requested by the Defendant*

Second, the Defendant argues that the Justice at trial erroneously refused to strike certain responses which were elicited by the Defendant's counsel on cross-examination of a prosecution witness. That witness was Betty Worrey.

During his examination of Mrs. Worrey, Defendant's counsel previously asked her questions concerning the incident and then inquired about Mr. Worrey's possible prior tendencies. The exchange proceeded as follows:

"Q And he never did any grievous bodily harm to you before, had he?

A No.

Q Or to his daugthers before, either daughter, bodily harm?

A He did molest Julie once before when we lived in Florida. I wasn't there. But the children told me about it.

MR. STEARNS: Now, your Honor.

THE WITNESS: I took her to a priest.

MR. STEARNS: I would like to have that stricken from the record as not responsive.

THE WITNESS: Well, you asked me if he had.

THE COURT: Just a moment, Mrs. Worrey. The motion to strike will be denied."

A motion to strike is properly made when a witness expounds an answer which is not responsive to the question asked and is also not admissible. 1 J. Wigmore, Evidence § 18 (1940). Even if relevant, a piece of evidence may be deemed inadmissible if it contains a high degree of prejudice thought to outweigh its evidentiary value. The action of a Justice at trial granting or denying a motion to strike certain testimony is reviewable only on the grounds that an abuse of discretion may have occurred.

We treat the motion to strike as referring to the four sentence answer of the witness, commencing with "He did molest Julie . . ." and concluding "I took her to a priest."[4]

---

3. Corroboration is not necessary for a rape conviction, though its presence necessarily lends greater credence to the victim's claims. State v. Dipietrantonio, 152 Me. 41, 122 A. 2d 414 (1956).

4. We wish to remind trial attorneys that specific objections to testimony may often require that counsel point out clearly which portions of that testimony are alleged to be objectionable. *See* M.R.Crim.P., Rule 51.

■ The Justice was correct in refusing to grant the motion as to the first three sentences of Mrs. Worrey's answer. The question asked by Defendant's counsel inquired about the possibility that the Defendant had previously harmed either of Mrs. Worrey's daughters. The tenor of this and other questions asked indicates that the defense hoped to show that Mrs. Worrey and Julie had no reason to fear Mr. Worrey. This in turn would discredit her story and cast some doubt on the rape incident itself.

■ In asking about the Defendant's prior conduct, the Defendant's attorney did not specifically refer only to conduct which the witness herself had seen. Counsel may not ask a far-reaching question and then seek to repudiate the answer when it is unfavorable. Greater leeway is generally allowed by trial justices on cross-examination concerning questions and answers.

We feel these three sentences were admissible as bearing upon Mrs. Worrey's fear of Mr. Worrey. Her fear of him could logically be the product of conduct which she had not seen but of which she had been told by her children at the time. The statements are not traditional hearsay because they are admitted to show her state of mind (lack of assurance in Mr. Worrey's unwillingness to harm the girl) as a result of receiving the information and not to prove the truth of the matters asserted by her informants.

The statement "I took her to a priest" causes us greater concern. That response is clearly non-responsive to the question asked about the Defendant's prior activities. However, was that one sentence prejudicial to the Defendant so that reversible error was committed?

We view the statement as an ambiguous and incomplete phrase impossible of precise interpretation. It may have tended to buttress Mrs. Worrey's testimony by suggesting that Julie went to a priest and therefore must have told the truth. Yet there is no way we can glean from the record why the visit took place or what happened when Julie saw the priest. We feel that the comment is basically immaterial to the issues and might best have been stricken as potentially confusing or prejudicial. Due to its ambiguity and the attenuated nature of any harmful inferences, we nevertheless find that admission of the non-responsive statement itself was not so prejudicial as to constitute reversible error and an abuse of discretion. Even if it were error, no substantial rights of the Defendant would be infringed on this record. M.R.Crim.P., Rule 52(a).

3. *The failure of the Justice to charge the jury as to assault with intent to rape and assault*

Third, the Defendant urges that prejudicial error was committed when the trial Justice denied defense counsel's request for two "lesser included offense" instructions. Just prior to the charge of the jury, the following discussion appears on the record.

"MR. STEARNS: . . . I would request for the record that you charge the other elements involved in the crime of rape, such as assault with intent to rape, or assault.

THE COURT: Well, the authorities in this State are—it is my understanding —that with a statutory rape those are not included offenses. And so I will not instruct on them."

We agree with the trial Justice's conclusion that statutory rape does not include assault with intent to rape or assault. Thus, no right to such additional instructions existed.[5]

We must remember that the Justice instructed the jury—with the agreement of

5. Therefore, we do not face the question whether, *on these facts*, the Defendant would have been entitled to such instructions even if the lesser offenses were included in a charge of statutory rape.

the Defendant—that the (legally sufficient but inartistically drawn) indictment charged the offense known as statutory rape (and not the common law type of rape). In order to determine whether the Defendant was entitled to have submitted to the jury as lesser included offenses in a charge of statutory rape, the offenses of assault with intent to rape and assault, we must analyze the elements of the three offenses.

First, however, we must bear in mind that recently, in State v. Leeman, Me., 291 A.2d 709 (1972), this Court studied the controversial issue of lesser included offenses and held that conviction for a lesser offense than that charged is permissible only "if the lesser, as legally defined, is *necessarily* a constituent part of the greater, as legally defined." 291 A.2d at 710.

Unlike the situation in the common law type of rape, the absence of consent of the female is not an element of the offense of statutory rape. *See* State v. Henderson, 153 Me. 364, 369, 139 A.2d 515, 518 (1958). The Legislature has, in the interest of protecting young girls even from their own immature indiscretions, created an offense unknown to the common law in which criminality is grounded in part upon the *age* of the female.

17 M.R.S.A. § 3153 created the offense of assault with intent to rape.[6] We have held that this section is applicable both to assaults committed with the specific intent to commit rape (as it was known to the common law) and to assaults committed with the specific intent to "unlawfully and carnally [know] and [abuse] a female child under 14 years of age" (which we call statutory rape). Moody v. Lovell, 145 Me. 328, 333, 75 A.2d 795, 797

(1950). The distinction between the elements of this offense and those of statutory rape is unmistakable. A specific intent to carnally know and abuse a female child *who is under the age of 14 years* is not a necessary element of statutory rape.

Our statute, 17 M.R.S.A. § 201, defines assault in this manner:

"Whoever unlawfully attempts to strike, hit, touch or do any violence to another however small, in a wanton, willful, angry or insulting manner, having an intention and existing ability to do some violence to such person, is guilty of an assault. If such attempt is carried into effect, he is guilty of an assault and battery."

The statute, we have said, is declaratory of the common law offense of assault. State v. Rand, 156 Me. 81, 161 A.2d 852 (1960).

We must note in particular two elements of criminal assault. (1) The Defendant must have intended to inflict some violence upon the victim (2) "however small" that violence would have been. The reference to "intention" does not mean that assault is a *specific intent* crime like assault with intent to rape. The intent required in assault is only the *general* intent to complete the act of an unlawful touching of the victim—not the intent to use the objectionable contact with the victim's body to accomplish an additional and particular illegal result, such as to rape, rob or kill the victim. *See* People v. Rocha, 3 Cal.3d 893, 92 Cal.Rptr. 172, 479 P.2d 372 (1971); State v. Hazen, 160 Kan. 733, 739, 165 P.2d 234, 239 (1946); People v. Katz, 290 N.Y. 361, 364, 49 N.E.2d 482, 484 (1943).

We have said that assault is an "inchoate battery" and that a battery is a "consummated assault". Williams v. State,

---

6. "Whoever assaults a female who has attained her 14th birthday with intent to commit a rape shall be punished by a fine of not more than $500 or by imprisonment for not more than 10 years. If such assault is made on a female who has not attained her 14th birthday, such imprisonment shall be for not less than one year nor more than 20 years.

Me., 276 A.2d 601 (1971). While the Defendant must have intended to do "some harm" to the victim (Hutchins v. State, Me., 265 A.2d 706 (1970)), the "harm" contemplated by *Hutchins* and the "violence" required by the statute need not be such as to inflict bodily injury upon the victim. It is enough if the intended bodily contact [7] would be done in such a manner as would reasonably be expected to violate the person and dignity of the victim. But it must be an *unlawful* touching.

 We said in State v. Sanborn, 120 Me. 170, 173, 113 A. 54, 56 (1921) that the crime of assault and battery "would not be committed if at the time of doing the act the mind of the doer were innocent." That is, to be guilty of an assault, the doer must intend an *unlawful* touching. Thus, the precise question becomes one of whether the offense of sexual intercourse with a girl under the age of 14 must necessarily include a charge of attempting an intended, unlawful touching of the person of the girl. It seems to us that the greater offense *can* be committed without the commission of the lesser.

 The preliminary acts which culminate in a statutory rape may be innocent at law until the sexual intercourse occurs. The doer *may* have reasonably relied upon consent,[8] misinformation as to the girl's age, and so forth. He may not have intended an *unlawful* touching. The sexual intercourse which follows is illegal simply because the girl is under the age of 14, not because the Defendant specifically intended wrongdoing.

 To paraphrase the language of *Leeman,* neither assault nor assault with intent to rape, as defined, is *necessarily* a constituent part of statutory rape, as defined.

Because we find that (1) there is sufficient evidence to support the verdict, (2) there is no prejudice resulting from a refusal to strike certain testimony, and (3) there is no right to lesser included offense instructions, we must deny the appeal.

The entry will be:

Appeal denied.

All Justices concurring.

---

7. For the purposes of comparing the elements of assault and statutory rape we have assumed that a consummated assault would result in some touching of the victim. We do not mean to suggest that the "any violence" which is attempted by the assault may or may not have been a non-contact violence. *See* Veney v. State, 251 Md. 159, 246 A.2d 608 (1968) ; People v. Preis, 27 Ill.2d 315, 189 N.E.2d 254 (1963) ; 1 R. Anderson, Wharton's Criminal Law and Procedure § 332 (1957).

8. This Court has recognized that in charges of assault the capacity of a particular child to consent to touchings of a sexual nature is to be determined from the circumstances of the particular child. The assault statute does not attempt to fix an arbitrary "age of consent". State v. Rand, supra, 156 Me. at 84, 161 A.2d at 854. Indeed, the expression "age of consent" often used in reference to

the statute creating the offense of statutory rape is misleading because the victim may not have the capacity to consent even *after* she has reached 14. More precisely, it is the age at which consent becomes relevant.

Regarding capacity to consent, see also discussion in 1 R. Anderson, Wharton's Criminal Law and Procedure § 342 (1957) ; 6 Am.Jur. 2d Assault and Battery §§ 66, 67 (1963) ; 6 C.J.S. Assault and Battery § 90 (1937).

Consent is equally irrelevant as to the offense of indecent liberties which we have held not to include, as a necessary element of the offense, the crime of assault. State v. Brown, 142 Me. 16, 18, 45 A.2d 442, 443 (1946).

We have recognized that the opposite is true in the case of forcible rape, a crime in which lack of consent is a necessary element of the offense, and that assault and battery is a necessarily included element of that crime. Wilson v. State, Me., 268 A.2d 484, 487 (1970).