STATE of Maine

v.

Peter ANANIA, Sr.

Supreme Judicial Court of Maine.

June 19, 1975.

Henry N. Berry III, County Atty., Peter G. Ballou, Asst. County Atty., Portland, for plaintiff.

Richard A. Davis, Merle C. Rideout, Jr., Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

Appellant was convicted in a jury waived trial of aggravated assault and battery.

Because an appropriate entry by the Clerk of a judgment of guilt had not been entered,[1] thus making an attempted appeal premature, an order was entered by the Law Court pursuant to Rule 37(a), M.R.Crim.P., remanding the case to the Superior Court for entry of an appropriate judgment and allowing an appeal therefrom if the proper procedural steps were thereafter taken.

■ Although it is true that a motion for a new trial was not filed after the corrected docket entry, such a motion had been filed after the announcement of the verdict. In view of the provisions of Rule 37(c), M.R.Crim.P., namely:

"A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof,"

we consider the appeal from the denial of that motion to have been seasonably made so that the case is now properly before us.

We deny the appeal.

We will consider the issues raised by this appeal in the order and language in which appellant asserts them in his brief.

I

■ "Was the Defendant justified in using force to repel an intruder in his own home?"

Mr. Anania was the manager of an apartment building in Portland and occupied quarters on the second floor. On the day in question a tenant on the third floor requested his assistance in removing one Thomas Curran who, she contended, was an uninvited guest in her apartment. Appellant responded to this request by ordering Mr. Curran to leave the premises. However, several minutes after these instructions were given, the upstairs tenant appeared at appellant's door and repeated her request. Appellant complied by standing at the bottom of a stairway and again instructing Mr. Curran, who was standing at the top of the stairs, to leave the premises. At that point Mr. Curran began to descend the stairs and the appellant, apparently being alarmed, entered his apartment and procured a pistol, assigning as his reason therefor, "I got scared."

In a few moments Mr. Curran appeared in the doorway of appellant's apartment, carrying some unidentified objects under his arms. The record reveals beyond any doubt that Mr. Curran neither verbally nor physically threatened the appellant. The testimony is undisputed that no threatening gestures of any kind were made. The appellant had not even taken the precaution of closing the door of his apartment while Mr. Curran was descending the stairway. In any event, the pistol was discharged, Mr. Curran dropped the objects that were under his arms and fled from the building, seriously wounded.

On these facts there could be no basis to support the defense of self-defense or to justify the use of potentially lethal force to expel the intruder. *State v. Millett*, 273 A.2d 504 (Me.1971); *State v. Jacowitz*, 128 Conn. 40, 20 A.2d 470 (1941); *see also State v. Paxson*, 99 A.2d 46 (Del.1916).

II

■ "In determining the guilt or innocence of Defendant, did the Court take into consideration findings and facts from other jurisdictions which are not germane to the case at bar?"

1. The transcript of the testimony includes an oral statement by the single Justice announcing from the bench a finding of guilt and informing the appellant of a proposed sentence. However, it was not until after the order from the Law Court that this was formalized and properly recorded by the Clerk of Courts.

The appellant has urged us to find obvious error in the language of the Justice below in announcing his verdict:

"Well, the Court has taken into consideration the evidence which was presented to it, *and information down in York County just recently* and based on these findings and facts, I must find Mr. Anania guilty of aggravated assault. . . ." (Emphasis supplied.)

Appellant contends that the Justice below was influenced in his decision by evidence not before him, namely, "information down in York County just recently."

We have no way of knowing to what the Justice was referring since the record is devoid of any factual basis for this statement.[2] However, the impact of this reference, assuming it to be disadvantageous to the appellant, is completely neutralized by the comment of the Justice made immediately thereafter, namely,

"but I think the facts as presented by Mr. Anania alone would be sufficient [to justify a finding of guilt] . . ."

In reviewing the Justice's findings of fact, there is nothing to indicate that he assigned "information down in York County" as a basis for any of his findings. When the Justice's verdict is read in its entirety, it is clear that no prejudice has been demonstrated against the appellant. The comment, if error at all, was harmless error. Rule 52(a), M.R.Crim.P.; *see State v. Babb,* 258 Md. 547, 267 A.2d 190 (1970).

### III

"Was the verdict against the weight of the evidence?"

We interpret the appellant's argument on this point not in the context of whether there was insufficient evidence on which the single Justice could conclude that the appellant had shot and wounded the victim but whether this act constituted an assault and battery as proscribed by 17 M.R.S.A. § 201[3] because the requisite criminal intent had not been established. As we see the emerging issue, we must decide whether one may be convicted of aggravated assault and battery, assuming there is no evidence of a *specific* and *subjective* intent to inflict bodily harm, bearing in mind the statutory provision that "an intent . . . to do some violence" is an essential element of the crime.

To answer this question we must have in mind the facts disclosed by the record. The Justice below made the following specific findings:

"1. The Court finds that on the thirtieth day of October, 1972, Mr. Thomas Curran was visiting a Florence Whitney on the third floor of an apartment building located in Portland, County of Cumberland and State of Maine, of which the defendant, Peter Anania, was manager. The said Peter Anania's own apartment was on the first floor.

2. The Court finds that because of an altercation between Mrs. Whitney and Mr. Curran, Mr. Anania became aware of the situation.

3. The Court finds that Mr. Curran, who had been drinking, came downstairs and appeared at the doorway of Mr. Anania's apartment.

4. The Court finds that Mr. Anania went to some place in his apartment and procured a pistol.

2. In their briefs both appellant and appellee suggest that the reference *may have been* to a civil case that had recently been tried in an adjoining county before three Justices of the Superior Court, one of the issues having to do with the use of deadly force by a police officer.

3. "Whoever unlawfully attempts to strike, hit, touch or do any violence to another however small, in a wanton, willful, angry or insulting manner, having an intention and existing ability to do some violence to such person, is guilty of an assault. If such attempt is carried into effect, he is guilty of an assault and battery."

5. The Court finds that Mr. Anania shot Mr. Curran and that whether or not Mr. Curran entered the apartment and that whether or not Mr. Anania was afraid of Mr. Curran, Mr. Anania used clearly excessive force and that such force amounts to an aggravated assault and battery."[4]

Additionally, we must remember that the Justice in announcing his verdict said, *"but I think the facts as presented to me by Mr. Anania alone would be sufficient."* Therefore, it becomes important that we consider what these facts were and in part we will summarize the testimony.

Mr. Anania testified that he had several times ordered Mr. Curran to leave the apartment building, that Curran had "never opened his mouth," but when he (Curran) started to come downstairs, "I got scared" and "I went in the apartment and got the gun."

The record then continues with this description of the actual shooting incident as testified to by appellant:

"Q Well, what happened after he was in the room and you were where you placed yourself?

A I just telling him to get out for the third and the fourth times. He start moving ahead to me, and when he come to me, I pulled the trigger, had the gun down, I don't know if I shot him or not. He says, 'All right, all right, I'm going.' He dropped everything, what he had, that's the only time I know he had a steam iron and milk container with a lot of liquor. I don't know what it was, I couldn't tell.

THE COURT: YOU didn't know it before?

THE WITNESS: On the floor.

Q You didn't know that before?

A No, I didn't know what he had.

THE COURT: He had it under his coat, under his arm?

THE WITNESS: He had it like this (indicating).

THE COURT: Okay.

Q Now, where did you aim this gun?

A *I didn't aim nothing; I just—shot, and I didn't aim nothing, just shot, and I don't know—I didn't thought I hit him.* He run out like a good person. He says, 'All right, all right, I'm going.' And, he's going, and then five or ten minutes later a policeman come, he says, 'Peter, you shot a guy.' I says, 'I deny it,' because I thought I didn't hit him. But, then four of them come and he says, 'Peter, you did shoot him.' And, I says, 'All right, I tell you the truth.' And I show him just how it happened. And, he looked down and find a shell." (Emphasis supplied.)

. . . . . . .

"Q Now, how many rounds did you have in the gun?

A Oh, I had eight or nine more bullets in there, but I didn't want to shoot him.

Q Now, did you know what he had under his coat when he was in the apartment?

A No, I didn't; I didn't know what he had."

From the above recited facts we must agree with the appellant that there was no *direct* evidence which would support a finding that the appellant had a specific intent to fire the weapon directly at Mr. Curran for the purpose of doing "some violence" to him.

4. The record amply supports the findings of the single Justice, except that Mr. Anania's apartment was on the second floor.

■ We reject the appellant's argument that the State had failed to prove that degree of criminal intent which is statutorily requisite for conviction of the crime of assault. An "intention . . . to do some violence" may be established, given appropriate facts, by evidence of a specific, subjective purpose "to do some violence." However, it is equally clear that proof of the requisite "intent" is not necessarily confined to such evidence. This statutory language is not calculated to require as indispensable proof of a subjectively existing conscious purpose "to do some violence." Criminal "intent" may equally well flow, *as a matter of law,* from intentionally doing an act which has the inherent potential of doing bodily harm, and doing so in a criminally negligent manner. This position is not inconsistent with any of our prior decisions and finds general support elsewhere. *Hutchins v. State,* 265 A.2d 706 (Me.1970); *State v. Brough,* 112 N.H. 182, 291 A.2d 618 (1972); *State v. Chiarello,* 69 N.J.Super. 479, 174 A.2d 506 (1961); *see State v. Evans,* 165 Conn. 61, 327 A.2d 576 (1973); *State v. Worrey,* 322 A.2d 73 (Me.1974); *see also Parker v. United States,* 123 U.S.App.D.C. 343, 359 F.2d 1009 (1966); *State v. Farmer,* 324 A.2d 739, n. 6 at 747 (Me.1974).

Where a criminal defendant attempted to justify shooting and wounding another by saying, "evidently I wasn't thinking much at all or I wouldn't have shot," the Tennessee Court dealt with the issue of criminal intent in this language:

"The intent necessary to constitute assault and battery is either an express desire upon the part of the accused to inflict the injury or it can be supplied as a matter of law from doing an act in such a reckless and wanton manner that the natural and probable results thereof will be to inflict an injury. . . ."

*Saunders v. State,* 208 Tenn. 347, 355, 345 S.W.2d 899, 902 (1961); *Bentley v. Commonwealth,* 354 S.W.2d 495 (Ky.1962); *see also King v. State,* 157 Tenn. 635, 11 S.W.2d 904 (1928); 6 C.J.S. Assault and Battery § 63.

■ Reverting to the facts, there can be no doubt that Mr. Anania *intentionally* procured the gun, *intentionally* carried it with him to confront the victim, and *intentionally* fired it at close range, seriously wounding Mr. Curran. From Mr. Anania's own statement[6] the inference is inescapable that the act of shooting was reckless and wanton, particularly in view of the fact that the entrance wound was in the lower part of the victim's abdomen. The totality of these facts and reasonable inferences drawn therefrom would legally justify the fact finder in concluding that the degree of criminal intent existed which the statute requires as a necessary element of the offense, and undoubtedly motivated the Justice below to make the comment previously quoted, "but I think the facts as presented to me by Mr. Anania alone would be sufficient."

Appellant's conduct would fall squarely within the definition of aggravated assault found in the Model Penal Code § 211.1(2)(a), namely:

"(2) Aggravated Assault. A person is guilty of aggravated assault if he:

(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or *recklessly under circumstances manifesting extreme indifference to the value of human life."* (Emphasis supplied.)

We thus conclude that the verdict was amply supported by the evidence and the entry must be:

Appeal denied.

All Justices concurring.

6. See emphasized testimony of the appellant, *supra* at 210.