[Crim. No. 3275. Second Appellate District, Division Two.—February 1, 1940.]

THE PEOPLE, Respondent, v. ALEXANDER JOSEPH AGGIE, Appellant.

Leland E. Zeman for Appellant.

Earl Warren, Attorney-General, and L. G. Campbell, Deputy Attorney-General, for Respondent.

WOOD, J.—Defendant was charged in an information containing two counts with the crimes of violating subdivisions 2 and 3 of section 337a of the Penal Code. Count 1, based on the alleged violation of subdivision 2 of the section, was dismissed, and defendant was convicted by the court sitting without a jury on count 2, in which it was charged that defendant received the sum of $1 to be wagered on the result of a horse race.

Defendant contends that the evidence is insufficient to sustain the judgment of conviction. Only two witnesses were presented by the prosecution, police officers McCoy and McDearmon. The defense presented no evidence. Officer McCoy testified that he is a police officer of ''this city'', attached to the central vice division; that on May 4, 1939, he accompanied one Morris Israel from a hat shop conducted by Israel which was about 25 feet from defendant's place of business and after giving Israel a one dollar bill ''to win on Mr. Finn 869'', went to defendant's place of business where defendant accepted the money from Israel and put it in his pocket. Thereupon Morris and the witness returned to the hat shop. The witness further testified that on a later occasion he went ''back there'' again and ''gave Morris a one dollar bill to bet on a horse''. On motion of defendant the trial court struck out the words ''to bet on a horse''. The witness further testified: ''Then I gave him a one dollar bill to bet on Laddie Stone, No. 37, the horse . . . '' Israel then went ''into the defendant's place, where the defendant was''. The witness

described defendant's place of business: "It was a cigar store, cigar counter on the west side of the room, three marble machines in the back, a telephone directly behind the marble machines." The witness further testified: "When Mr. Morris handed the defendant the money did the defendant take the money? A. He did. Q. Is that what you mean by the word 'accepted'? A. Yes. Q. Then what did the defendant do or say? A. He repeated 'Mr. Finn, number 869, to win'. Q. And what else. A. That was all. Q. Did you see him do any writing? A. No, sir. Q. Did he hold the money up in his hand? What did he do with it? A. He put it in his pocket . . . We didn't arrest the defendant until the 9th of May". Officer McDearmon testified: "Q. Did you go into a *place in this city* where the defendant was on or about May 4th of this year? A. No, sir, I did not. Q. Were you near there? A. Yes, I was when the other arrest was made. When Israel was arrested I was in there then. Q. When was that? A. That was, I believe, the 4th or 5th. Q. Who did you go in there with on that occasion? A. Officers Howard and McCoy and myself, I believe it was. Q. And did you see the defendant? A. No, I did not. Q. Didn't see the defendant? A. No, sir. Q. Did you look for him? A. Yes, I did. Q. Then on the 9th of May you went in there again? A. Yes, sir. Q. Were those the only two occasions you had ever been in there? A. Yes. Q. And what is that establishment? What is in there; what is the equipment? A. There is a cigar counter, and they sell magazines in front; they sell racing information; have marble machines in the back and a telephone. It is a small room. . . Q. When you went in the place where the defendant was on the 9th of May, or any other time about the 8th, did you find any of that kind of equipment? A. We found that they sold it there but we didn't find anything laying around like that. Q. Had it up on the counter for sale? A. Yes. On the outside of the counter they had sheets up there." ("Scratch" sheets or "tip" sheets giving information on races.)

The testimony of the two officers stands uncontradicted. The trial court was justified in basing the conviction of defendant on reasonable inferences to be drawn from the evidence. The court could readily infer from the testimony that

defendant received from officer McCoy a one dollar bill to be wagered on a horse race.

▮ Defendant makes the further contention that the prosecution failed to prove the jurisdiction of the court. It will be noted that both officers were referring in their testimony to the same establishment, the place of business of defendant which was located in "this city". Although the court in which defendant was convicted is authorized to conduct trials in a number of cities in Los Angeles County, the court is without jurisdiction to conduct a trial in any city located outside of the county of Los Angeles. The prosecution properly relies upon the presumption that official duty has been regularly performed. (*People* v. *Wright,* 79 Cal. App. 523 [250 Pac. 204].) Since the offense was shown to have been committed in a city in which the court was sitting, referred to by the witnesses as "this city", it must be concluded, in view of the above-mentioned presumption, that the court had jurisdiction of the offense with which defendant was charged. Direct evidence is not necessary to prove venue, which may be established by inferences from the evidence. (*Fletcher* v. *State,* 34 Okl. Cr. 305 [246 Pac. 485]; *State* v. *Hurlbert,* 153 Wash. 60 [279 Pac. 123].)

▮ Defendant complains that he was not permitted to argue the question of the guilt or innocence of defendant. The record discloses the following proceedings: "Mr. Johnson: That is all. The People rest. Mr. Zeman: Move to dismiss, Your Honor, for lack of evidence. The Court: Which count? Mr. Zeman: Both counts, Your Honor. The Court: Motion granted as to count one. Denied as to count two. Mr. Zeman: I am just thinking, Your Honor. May I have one minute to think. The Court: All right, go ahead and think. Mr. Zeman: We rest. The Court: The defendant is adjudged guilty on count two. Waive time for sentence? Mr. Zeman: No, Your Honor, I would like to have sentence go over until Friday."

The haste with which the court passed upon the issue to be decided is not to be commended. The error, however, does not call for a reversal of the judgment. Counsel for defendant failed to request the court for permission to argue at the close of the trial. The record reveals that when a motion for a new trial was presented to the court at a later date defendant's counsel did in fact make an argument to the court.

Thus it appears that defendant was not deprived of the right to argue. The irregularity as to the time of argument did not result in a miscarriage of justice.

The judgment and the order denying a new trial are affirmed. The appeal from the order denying the motion in arrest of judgment is dismissed.

Moore, P. J., concurred.

McCOMB, J., Dissenting.—I dissent.

From a judgment of guilty of violating subsection 3 of section 337a of the Penal Code of the State of California and from an order denying his motion for a new trial, after trial before the court without a jury, defendant appeals.

Defendant relies for reversal of the judgment on the ground that *the respondent failed to offer any evidence to prove venue of the crime of which defendant was convicted*.

This proposition is tenable. The law is established in California that in order to sustain a conviction evidence must be received to prove the venue of the crime charged and that, where there is no evidence that a felony was committed in the county over which the superior court had jurisdiction, a conviction will be reversed. (*People* v. *Pollock*, 26 Cal. App. (2d) 602, 604 [80 Pac. (2d) 106]; *In re Huber*, 103 Cal. App. 315, 316 [284 Pac. 509].)

In the instant case the information charged that the offense was committed in the county of Los Angeles. The only evidence upon this issue was that of a police officer A. C. McCoy, who testified that he was a police officer of "this city" and that he visited the defendant's place of business, and of the witness McDearmon who testified as follows:

"Q. Did you go into a place in this city where the defendant was on or about May 4th of this year?

"A. No, sir, I did not.

"Q. Were you near there?

"A. On May the 9th I went with Officer McCoy.

"Q. You weren't in there before May 9th?

"A. Yes, I was when the other arrest was made. When Israel was arrested I was in there then.

"Q. When was that?

"A. That was, I believe, the 4th or 5th.

"Q. Who did you go in there with on that occasion?

"A. Officers Howard and McCoy and myself, I believe it was.

. . . . . . . . . . . . .

"Q. Then on the 9th of May you went in there again?

"A. Yes, sir.

"Q. Were those the cnly two occasions you had ever been in there?

"A. Yes."

The foregoing testimony, it is obvious, was wholly inadequate to support an inference that the crime was committed in the county of Los Angeles. The testimony states that the witness McCoy was a police officer of *this city*. However, there is no testimony as to what city *this city* was. Likewise there is no testimony as to the city where the defendant was at the time of the alleged crime or where his place of business was located. In *People* v. *Bringhurst,* 192 Cal. 748 [221 Pac. 897], and *People* v. *Wright,* 79 Cal. App. 523 [250 Pac. 204], there was direct testimony as to the place where the offenses charged were committed.

In the present case there was gross and inexcusable carelessness upon the part of the prosecution in failing to make direct proof that the offense was committed in the county of Los Angeles.

For the foregoing reasons, in my opinion, the judgment and order should be reversed and a new trial ordered.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 29, 1940.