**STATE of Maine**

v.

**Michael B. MANN.**

Supreme Judicial Court of Maine.

July 9, 1976.

900 ■

David Q. Whittier, County Atty., South Paris, Thomas E. Delahanty II, Dist. Atty., John B. Cole, Asst. Dist. Atty., for plaintiff.

Michael J. O'Donnell, Bethel, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and WEATHERBEE *, JJ.

DUFRESNE, Chief Justice.

Michael B. Mann, the defendant, was indicted by the Grand Jury in and for the County of Oxford at the May term, 1974, of the Superior Court for armed assault in

---

* WEATHERBEE, J., sat at argument and participated in consultation, but died prior to the preparation of the opinion.

violation of 17 M.R.S.A., § 201–A (count I), for breaking arrest in violation of 17 M.R.S.A., § 1405 (count II) and for carrying a concealed weapon in violation of 25 M.R.S.A., § 2031 (count III). Found guilty of armed assault[1] as charged in the first count of the indictment at a jury-waived trial, Mann was sentenced to a term of not less than 2 years and not more than 4 years at the Maine State Prison. He appeals his conviction to this Court, raising several points of error. We deny the appeal.

### I.  Sufficiency of the indictment

The defendant contends the instant indictment is fatally defective on two grounds, 1) it fails to allege in the words of the statute that the defendant was "armed" with a firearm, and 2) it omits the statutory language that the accused unlawfully attempted to strike, hit, touch or do any violence to another in a wanton, willful or angry or insulting manner having an intention and existing ability to do some violence to such person. Both contentions are devoid of merit.

### I–A

The indictment charged the assault in the following manner:

"The Grand Jury Charges:

On or about the 26th day of April, 1974, in the Town of Mexico, County of Oxford, and State of Maine, Michael Mann did *while carrying a firearm* to wit, a revolver, unlawfully assault Frederick G. Tribou by pointing the said revolver directly at Frederick G. Tribou's head." (Emphasis supplied)

Comparing the statutory provisions of 17 M.R.S.A., § 201–A with the language of the indictment, we understand the defendant's objection to be directed at the use of the expression "while carrying a firearm" for the exact statutory wording of "while armed with a firearm." The validity of indictments, however, does not necessarily rest on whether the exact words of the statute appear, but rather on whether the necessary statutory elements of the crime charged are set forth with sufficient particularity and clarity. See *Duncan v. State*, 1962, 158 Me. 265, 183 A.2d 209, cert. denied 371 U.S. 867, 83 S.Ct. 129, 9 L.Ed.2d 104. It is sufficient in charging the commission of a statutory crime to use words which, if not the exact legislative terminology, are equivalent or more than their equivalents in meaning, provided they fully set forth the necessary elements of the statutory crime charged. See *Moody v. Lovell*, 1950, 145 Me. 328, 75 A.2d 795; *State v. Thibodeau*, 1976, Me., 353 A.2d 595.

As stated in *State v. Lynch*, 1895, 88 Me. 195, 33 A. 978, the statutory word "armed" means furnished or equipped with weapons of offense or defense. Id. 198, 33 A. 978. In *State v. Farmer*, 1974, Me., 324 A.2d 739, we said that having in one's possession or control a real gun available for use, offensively or defensively, as a weapon adequately connotes the statutory meaning of "armed with a firearm." See *Curl v. State*, 1969, 40 Wis.2d 474, 162 N.W.2d 77, 84.

The expression "while carrying a firearm" when used in the active transitive sense may connote transportation, but when used in the general sense of carrying

---

[1]. 17 M.R.S.A., § 201–A. Firearm

"Whoever, if armed with a firearm, unlawfully attempts to strike, hit, touch or do any violence to another, however small, in a wanton, wilful or angry or insulting manner having an intention and existing ability to do some violence to such person, is guilty of an armed assault. If such attempt is carried into effect, he is guilty of an armed assault and battery. Any person convicted of either offense shall be punished by imprisonment for not less than 2 nor more than 25 years. The imposition or execution of a sentence for a violation of this section shall not be suspended and probation shall not be granted."

weapons it rather denotes the concept of being armed with or wearing weapons. See *People v. Smith*, 1946, 72 Cal.App.2d Supp. 875, 164 P.2d 857.

The instant indictment was legally sufficient in charging the assault in terms of "while carrying a firearm," which expression is the equivalent of the statutory words "while armed with a firearm."

### I-B

The defendant further contends that the failure of the indictment to describe the defendant's conduct in the express terms of the statute such as in a "wanton, wilful, angry or insulting manner, having an intention and existing ability to do some violence" voids the indictment, because such allegation is necessary as a matter of substantive law legally to charge the statutory crime of assault armed with a firearm. In this, the defendant is in error.

Our assault statute has been interpreted as being merely declaratory of the common law and the mere use of the term assault necessarily implies the general descriptive conduct associated therewith in the statute. The defendant's present contention was rejected in *State v. Creighton*, 1904, 98 Me. 424, 57 A. 592 and in *State v. Mahoney*, 1923, 122 Me. 483, 120 A. 543.

The fact that the Legislature has expanded our assault and battery statute to provide enhanced punishment for its commission when the accused is armed with a firearm in no way alters the statutory basic concept of the assault and battery itself. This Court's past interpretation of the assault and battery statute was background setting under which the armed assault statute was enacted and must be deemed integrated in the new statute by legislative adoption. See *State v. Davenport*, 1974, Me., 326 A.2d 1, at 6.

We have no hesitancy in reaffirming the doctrine that assaults may be charged in general terms and that it is not necessary to specify the conduct which will serve as proof thereof. Although "intention to do some violence" is an essential element of the crime of assault (see *Hutchins v. State*, 1970, Me., 265 A.2d 706), the charge of assault *vi termini* is an implicit allegation of intentional conduct tending to violence.

As we said in *State v. Worrey*, 1974, Me., 322 A.2d 73, the statutory reference to "intention to do some violence" does not mean that assault is a *specific intent* crime. The intent required to bring the actor's conduct within the scope of the assault statute is only the *general intent* to complete the act of an unlawful touching of the victim. See *State v. Anania*, 1975, Me., 340 A.2d 207; *State v. Little*, 1975, Me., 343 A.2d 180, 185.

Since the "armed assault" statute (17 M.R.S.A., § 201–A) is identical to the "plain" assault statute (17 M.R.S.A., § 201), neither proof nor allegation of a specific intention to do some violence to the victimized person is necessary in either instance. See *State v. Westphal*, 1975, Me., 349 A.2d 168, 170.

### II. Trial errors

II–A. The defendant claims that he was not afforded sufficient time at trial to review the criminal record of the State's principal witness and, by reason thereof, was placed in a disadvantageous position resulting in substantial prejudice to him. It is true that the State, up to the time set for trial, had not responded to the defendant's request pursuant to Rule 16, M.R. Crim.P. seeking disclosure of Mr. Tribou's criminal record. However, upon learning this fact, the Court did suspend for three hours to permit the defendant's counsel to study and familiarize himself with the information which had then been furnished him by the prosecutor. The three hour recess was granted over the defendant's

counsel's statement that he would be ready to proceed possibly in one half hour. After the recess trial was started without further protest. Failure of the defendant at that time to object and make known to the Court any further complaint he might have had in relation to the witness's criminal record must be viewed as trial strategy and will not be considered for the first time on appeal. *State v. Rowe*, 1968, Me., 238 A. 2d 217, 225.

■ II–B. The defendant charges error in the Court's exclusion of three convictions which he sought to introduce into evidence to impeach the credibility of Mr. Tribou. These convictions dating back respectively to July 16, 1946, December 24, 1948 and April 27, 1949 relate to the crimes of assault, taking an automobile without the owner's permission and drunken driving or driving under the influence of intoxicating liquor. The Justice below, however, did not give as reason for excluding them the failure of any of the convictions to meet the time requirements for admissibility provided by 16 M.R.S.A., § 56.[2] Notwithstanding the Court's stated justification for his ruling against admissibility might have been legally incorrect, his decision thereon was otherwise correct, since each conviction was outside the statutory time frame underlying admissibility. Indeed, the three convictions respectively took place more than 15 years prior to the instant trial and any incarceration period on account thereof would have terminated more than 10 years before trial.

■ If the court reaches a correct conclusion of law, the court's ruling as such being right as a matter of law, it is immaterial that an improper reason for the conclusion is given. *Laferriere v. Paradis*, 1972, Me., 293 A.2d 526, 529; *A. E. Borden Co., Inc. v. Wurm*, 1966, Me., 222 A.2d 150, 153; *Hubert v. National Casualty Company*, 1958, 154 Me. 94, 144 A.2d 119.

II–C. When the defendant rested his case, his counsel informed the Court that

"[w]e would at this time renew our motions [meaning motions for judgment of acquittal and for directed verdict on Count 1 of the indictment as made at the close of the evidence offered by the State]."

The State in turn rested and the Court stated:

"All right, the testimony is now closed."

Addressing the defendant's counsel, the Court added:

"Now you may make your motion for the record."

The defendant's counsel then made the following plea to the Court:

"At this time, your Honor, we do move the Court to dismiss Count 1 of the indictment on the basis that the State has failed to prove beyond a reasonable doubt that this defendant in any way, shape or form intended to assault Mr. Tribou or anyone else; that we certainly admit and do not in any way dispute the fact that defendant was present, Mr. Tribou was present, there was a confusing situation regarding the family disturbance, that the defendant's gun was present and that the gun discharged in the hand of the defendant, but we maintain most strenuously that this discharge took place by accident and that the defendant did not aim the gun, did not in-

---

2. 16 M.R.S.A., § 56. Prior conviction as affecting credibility
   "No person is incompetent to testify in any court or legal proceeding in consequence of having been convicted of an offense, but conviction of a felony, any larceny or any other crime involving moral turpitude may be shown to affect his credibility, provided that less

than 15 years have transpired since said conviction and less than 10 years have transpired since termination of any incarceration period therefor." We intimate no opinion, however, whether the legislative proviso must be interpreted in the conjunctive or alternative sense.

tend to aim the gun or did not intend any harm to Mr. Tribou, and we do feel that the evidence as presented both by the State's witness through Mr. Provencher and the defendant's witnesses substantiates the defendant's position."

Thereupon, the Court explained at length the basis upon which he was satisfied beyond a reasonable doubt that the defendant was in fact guilty of the crime charged in Count 1 of the indictment [armed assault] and concluded his peroration with the announcement that he was so finding the defendant guilty.

For the first time at the appellate level the defendant raises the point that he was deprived at trial of his right to closing argument.

■ The general rule governing proper appellate procedure forecloses, except in exceptional circumstances, review of questions which a party advances for the first time in the Law Court. Such issues are deemed in legal effect to have been "waived" at trial. *Frost v. Lucey,* 1967, Me., 231 A.2d 441; *Walsh v. City of Brewer,* 1974, Me., 315 A.2d 200, 209. This rule applies even though the belatedly raised issue concerns an alleged violation of the constitution of the United States. *Younie v. State,* 1971, Me., 281 A.2d 446; *Reville v. Reville,* 1972, Me., 289 A.2d 695. The same would be true when, as in this case, the error asserted may constitute an invidious assault upon the constitution of the State of Maine.

■ Thus, the claim of reversible error on the ground the defendant was deprived of the right of closing argument must be reviewed, if at all, in the context of obvious error affecting the substantial rights of the defendant. Rule 52(b), M.R.Crim. P. See *State v. Smith,* 1944, 140 Me. 255, 285, 37 A.2d 246, 259.

Article I, section 6, of the Constitution of Maine provides that in all criminal prosecutions, the accused shall have the right to be heard by himself and his counsel, or either, at his election. The right to counsel is similarly guaranteed by the Sixth Amendment to the Constitution of the United States made applicable to the states through the Fourteenth Amendment.

■ Closing argument for the defense is a basic element of the adversary factfinding process in a criminal case. For this reason, a criminal defendant's constitutional right to effective assistance of counsel for his defense includes the right to have his counsel make a proper closing argument on the evidence and the applicable law, however simple, clear, unimpeached and conclusive the evidence may appear to be. This constitutional guaranty applies to all criminal trials, whether jury or jury waived. Total denial of the opportunity for summation argument in a nonjury criminal trial is a denial of the basic right of the accused, if pro se, to make his defense, and, if represented by counsel, to effective assistance of counsel. *Herring v. State of New York,* 1975, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593. *Yopps v. State,* 1962, 228 Md. 204, 178 A.2d 879. See also *United States v. Walls,* 1971, 6 Cir., 443 F.2d 1220; *People v. Thomas,* 1973, 390 Mich. 93, 210 N.W.2d 776.

At the close of the evidence in a jury-waived trial, an accused has the right to address the court and argue his case fully and fairly, within proper limits, both upon the legal propositions involved and upon the evidence presented. This is a fundamental right going to the very essence of the fairness of court hearings and its deprivation constitutes error of constitutional dimension. *Decker v. State,* 1925, 113 Ohio St. 512, 150 N.E. 74.

■ Our rules of court confirm that the right of closing arguments is a right of very high degree of importance to parties litigant, whether in a criminal trial (Rule 30(a), M.R.Crim.P.) or in a civil trial (Rule 51(a), M.R.Civ.P. Such rights do not rest in the discretion of the trial judge

to grant or withhold. See *Reed v. Reed,* 1916, 115 Me. 441, 99 A. 181; *Johnson v. Josephs,* 1884, 75 Me. 544.

■ Fundamental constitutional rights may be waived if not asserted at the proper time. *Presque Isle TV Co. v. United States,* 1967, 1 Cir., 387 F.2d 502, 506. See *Henry v. State of Mississippi,* 1965, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408.

■ True, we said in *Green v. State,* 1968, Me., 245 A.2d 147, that

"[t]he doctrine of waiver when applied to constitutional or statutory rights necessitates in this day more than the mere failure to claim one's rights but rather connotes a free, deliberate and understanding foregoing of one's known rights,"

nevertheless, the validity of a waiver may be determined from the totality of the circumstances. See *Schneckloth v. Bustamonte,* 1973, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854.

■ The right to summation may be expressly waived by counsel. The decision to do so is a matter of trial strategy and absent a showing of incompetency of counsel or the presence of exceptional circumstances, counsel's decision to waive closing argument, even though taken unilaterally without consultation with the accused is binding on the accused. *Commonwealth v. Gambrell,* 1973, 450 Pa. 290, 301 A.2d 596.

■ A failure of the defendant to insist at the proper time upon his constitutional right to be heard in person or by counsel in argument of his cause at the close of the evidence, absent a showing of incompetency of counsel or the presence of exceptional circumstances, will constitute a waiver of such right and operate as an estoppel to his afterwards setting it up against the state. *Henry v. State,* 1913, 10 Okl.Cr. 369, 136 P. 982, 986. See *Cole v. State,* 1916, 14 Ala.App. 71, 71 So. 616.

The case of *State v. Hale,* 1971, Mo., 472 S.W.2d 365 is on all fours with the instant case. In *Hale,* the Court at the close of all the evidence after stating upon its reconvening following a short recess that it had again reviewed the evidence, announced without the benefit of argument of counsel the punishment to which the defendant was to be sentenced. At no time was there a request on behalf of the defendant that the finding of guilt be set aside or withdrawn to permit oral argument. The appellate Court ruled that the accused was not unconstitutionally denied the right to orally argue his case. To the same effect, see *Long v. City of Opelika,* 1953, 37 Ala.App. 200, 66 So.2d 126, certiorari denied 259 Ala. 164, 66 So.2d 130; *Casterlow v. State,* 1971, 256 Ind. 214, 267 N.E.2d 552; *United States ex rel. Spears v. Johnson,* 1972, 3 Cir., 463 F.2d 1024; Cf. *Moore v. State,* 1969, 7 Md.App. 330, 254 A.2d 717.

■ Furthermore, in the instant case, counsel had already argued fully his motion for acquittal and it would have been needless repetition to reargue the case to the court, and the failure to make closing argument in the absence of a request for the same amounted to a waiver thereof, especially where the record shows that the defendant was not prejudiced thereby. See *Rome v. State,* 1964, 236 Md. 583, 204 A.2d 674; *People v. Aggie,* 1940, 37 Cal.App.2d 110, 98 P.2d 806.

We hold that the defendant was not deprived of the right to closing argument and that the irregularity in relation thereto did not rise to the degree of manifest error resulting in a miscarriage of justice. The defendant takes nothing from this claim of error.

*III. Sufficiency of the evidence*

■ The defendant contends that the evidence presented was insufficient to support beyond a reasonable doubt the Court's

conclusion that the defendant had committed the crime of armed assault. His motions for judgment of acquittal at the close of the evidence offered by the State and at the conclusion of the entire case were denied. His claims of error are without merit.

■ The issue raised by a motion for judgment of acquittal made at the close of the State's evidence in chief is waived when, upon its denial, the defendant proceeds to offer evidence in his own behalf as Mann did in the instant case. *State v. Farmer*, 1974, Me., 324 A.2d 739, 747; *State v. Morton*, 1972, Me., 290 A.2d 371, 373; Rule 29(a), M.R.Crim.P.

■ In reviewing the lower Court's denial of the motion for judgment of acquittal made at the conclusion of the whole case, the appellate inquiry becomes a determination of the sufficiency of the evidence to support the defendant's conviction beyond a reasonable doubt.

In a jury case, we said that our duty in ruling upon the correctness vel non of the denial of a motion for judgment of acquittal was to determine whether, in view of all the testimony, there was believable evidence from which the jury was warranted in believing beyond a reasonable doubt that the defendant was guilty. *State v. Arsenault*, 1956, 152 Me. 121, 127, 124 A.2d 741, 744; *State v. Goldman*, 1971, Me., 281 A. 2d 8, 12.

■ In a nonjury case, the test of the sufficiency of the evidence similarly rests upon the determination whether, in view of all the testimony, there was believable evidence from which the single justice as the factfinder was warranted in believing beyond a reasonable doubt that the defendant was guilty.

As stated in *Tefke v. State*, 1969, 6 Md. App. 139, 250 A.2d 299, at 304:

"The test of sufficiency of the evidence in a non-jury case is 'whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged.' "

See also *State v. Berger*, 1975, N.D., 235 N.W.2d 254, 263; *State v. Sanderson*, 1975, Mo.App., 528 S.W.2d 527; *City of Beatrice v. Blake*, 1974, 192 Neb. 503, 222 N.W.2d 584.

■ In nonjury criminal trials the weight of the evidence and the credibility of the witnesses rest within the determination of the trial Justice and we have no right to substitute our factual conclusions for those of the single Justice who saw the witnesses and heard their testimony. *State v. Dyer*, 1972, Me., 289 A.2d 693. See *State v. Bickford*, 1973, Me., 308 A.2d 561, 568.

In the instant case, the factfinder was presented with the following scenario. One Frederick Tribou, the State's main witness, a resident of Mexico, Maine, was employed on a part time basis as a security guard at the Riverside Restaurant in said City. In the early hours of April 26, 1974, Tribou, while at the Riverside Restaurant, was performing his role as constable when at approximately 1:40 a. m. he was apprised by the waitresses that the defendant Mann, who had entered the diner with his sister, was persona non grata in that establishment. As a result, Tribou asked Mann to leave the restaurant. Mann, in turn, told Tribou that there had to be a mistake as he was not barred from the diner. In response to this information, Tribou asked the waitresses if they were sure they had pointed out the right person. They, once again, assured Tribou that the defendant was, by order of the owner, banned from the premises. On returning to Mann's table, Tribou found the defendant engaged in a rather vociferous marital dispute with his wife. Tribou repeated his request that Mann leave. The defendant refused to do so.

Meanwhile, Mann's sister had offered to take Mrs. Mann home. The two women were leaving the diner when Tribou renewed his request that the defendant be gone. Again, Mann expressed his unwillingness to be on his way. At this point, however, a scuffle of sorts broke out between the departing women in the doorway of the restaurant. This caused Tribou and Mann to leave the diner for the street area. There, Mann seized his wife and shoved her with some force against the car. Tribou ordered Mann to desist and to leave the area immediately.

Tribou testified that he then turned to watch the two women for a moment when their cries of "No, no, Mike," caused him to turn towards the defendant whom he observed pull a small handgun from his rear pocket and level it at his (Tribou's) head. Virtually instantaneously with this action, one Leroy Provencher reached and grabbed the defendant's pistol from him. In the process, the weapon discharged harmlessly.

At trial, all the witnesses agreed to the fact that Mann had a gun and that he was holding it in his hand when Mr. Provencher seized it from him. The defendant, his wife and sister, however, all testified that Mann did not have the weapon on his person just prior to the assault, but had in fact picked it up from the ground. In addition, all three witnesses alleged that the gun at no time was pointed directly at Tribou.

The presiding Justice, after evaluating the testimony and the witnesses, chose to accept the version given by the witness Tribou as the true account of the facts in arriving at his decision.

In finding the defendant guilty of armed assault, the Justice below makes it abundantly clear that his decision in the matter was founded to a large degree upon the testimony of the State's chief witness Frederick G. Tribou; "I am convinced by the testimony of the first witness for the State, who impressed the Court with the fact that he was telling the truth and that he was relating the facts as they occurred."

In determining the sufficiency of the evidence to compel belief beyond a reasonable doubt, we must bear in mind that it is for the factfinder to decide the credence to be given the various witnesses and their testimony. And, proof beyond a reasonable doubt may rest upon the testimony of one witness alone. *State v. Trask*, 1966, Me., 223 A.2d 823, 824, 825; *State v. Newcomb*, 1951, 146 Me. 173, 78 A.2d 787.

Throughout his testimony, both on direct and cross-examination, the witness Tribou maintained consistently that the defendant Mann drew a handgun and pointed it directly at, and a short distance from, his (Tribou's) head. The fact that Mann threatened Tribou with a pistol is corroborated by the testimony of Leroy Provencher. In fact, there is no doubt that the appellant had a gun and was holding it in his hand at the time of the incident. Exactly how the weapon got into the defendant's hand, and the manner in which it was being used, are factual questions the resolution of which are better left to the sound judgment of the trial Court acting as factfinder.

The entry will be

Appeal denied.

All Justices concurring.

WEATHERBEE, J., sat at argument and participated in consultation, but died prior to the preparation of the opinion.

DELAHANTY, J., did not sit.