**STATE of Maine**

**v.**

**Dalton Leroy BRIDGES.**

Supreme Judicial Court of Maine.

Argued Jan. 9, 1980.

Decided April 24, 1980.

Charles K. Leadbetter (orally), Pasquale Perrino, Asst. Attys. Gen., Augusta, for plaintiff.

Nisbet, MacNichol & Ludwig, P. A., Francis M. Jackson (orally), Alexander MacNichol, South Portland, for defendant.

Before McKUSICK, C. J., WERNICK, GODFREY and GLASSMAN, JJ., and DUFRESNE, A. R. J.

McKUSICK, Chief Justice.

In a jury-waived trial in the Superior Court, Cumberland County, defendant was convicted for murder of his estranged wife, Diane Bridges, 17–A M.R.S.A. § 201(1)(A), and for aggravated assault upon Robert R. Richard, 17–A M.R.S.A. § 208 (Supp.1979). On appeal from the murder conviction, defendant challenges the sufficiency of the evidence of the requisite culpable state of mind, the burden of proof placed upon him to prove his defense of insanity, the Superior Court justice's refusal to consider a conviction for manslaughter, and three evidentiary rulings. We reject each of defendant's arguments and affirm his conviction for murder of his wife Diane. However, as the State concedes before this court, defendant's conviction for aggravated assault upon Mr. Richard must be reversed.

*Facts*

The Superior Court justice sitting without a jury was warranted in finding the following facts beyond a reasonable doubt.

In the early fall of 1978, Diane Bridges, after eight years of marriage, left defendant and sued for divorce. She and her two children moved in with a friend, Mrs. Katz, who lived in Portland, and tried to keep her whereabouts secret because of her fear of defendant. He eventually discovered where Diane was living. He also came to think that she was dating Mrs. Katz's son, Robert Richard, even though defendant admitted at trial he had no basis for that belief. Over a period of time, defendant told a number of acquaintances that he would "blow her head off" if Diane divorced him, and that "if he couldn't have her, no one would."

During the early morning hours of December 27, 1978, the day of the shootings, defendant was awakened by a telephone call from his wife, who said that she was going to work in Portland that morning. Defendant left his house in Portland and drove to Westbrook, where he bought milk and a newspaper, and chatted with several friends. At about 9:30 a. m. defendant called the babysitter in Westbrook to see if Diane had brought the children. Before the sitter could explain why Diane was not bringing the children that day, defendant hung up. Defendant drove back to Portland, where he bought gasoline for his car and tried to buy a bathroom tile to replace one he had broken earlier that morning.

As defendant was again driving on Brighton Avenue toward Westbrook, he met Diane driving the other way, with Robert Richard in the passenger's seat. Defendant made a U-turn and pursued the

other car. During the pursuit, he opened his locked glove compartment, removed and loaded a gun, and rolled down the passenger-side window. Even by running a number of red lights, Diane was unable to get away from defendant. As defendant pulled alongside her car near Deering Oaks, he fired several shots that shattered her driver's window. After Diane came to a stop, defendant stopped also and walked over to her car. Pointing his gun through the driver's window, he shot Diane, who died soon thereafter. Mr. Richard received a head wound, apparently from a bullet ricocheting off the car's ceiling.

After the shooting, defendant drove off in his automobile, turned right onto Park Avenue, and drove to Sambo's Restaurant. Upon entering Sambo's, defendant recognized and nodded to an acquaintance. Defendant promptly made a telephone call to the Portland police, identifying himself as "Mr. Jones" and asking to see a police officer. As soon as officer Dering arrived at the restaurant, defendant volunteered his real name and the fact that "he had just caught his wife with another man." While being frisked by the officer, defendant said that he didn't have a weapon because he had thrown it out of the car onto Park Avenue. Defendant then asked to see a doctor.

Indicted for the murder of Diane and the attempted murder of Mr. Richard, defendant pleaded not guilty and not guilty by reason of insanity. At trial, defendant testified that he remembered nothing about the events that occurred from the time he had first seen Diane and Mr. Richard driving down Brighton Avenue to some time several hours later in the police station. In support of his claim defendant called two witnesses, Dr. Bowman, a psychiatrist, and Dr. Bishop, a clinical psychologist. Dr. Bowman testified that defendant was suffering from mental disease, which he identified as either schizophrenia or chronic brain syndrome or hysterical neurosis, dissociative type, or a combination of the three. In his opinion, as a result of these mental diseases, defendant "went berserk" at the time of the shooting. Dr. Bishop's opinion was that defendant was suffering from hysterical neurosis, dissociative type, which disease prevented him from conforming his conduct to the requirements of the law. In his opinion, defendant did not intend to kill his wife.

In rebuttal the State's psychiatric expert, Dr. Jacobsohn, testified to his opinion that there was no evidentiary support for a diagnosis of hysterical neurosis, dissociative type, or any other "major neurological deficit." Dr. Jacobsohn believed that defendant was merely "repressing" the traumatic events of December 27, 1978, and that on that date defendant was not suffering from a mental disease or defect that would have substantially affected his intellectual and emotional functioning.

### I. *Sufficiency of the Evidence of Requisite Culpable State of Mind*

Defendant asserts that there was insufficient evidence to support the finding of the Superior Court justice that defendant acted intentionally or knowingly to kill his wife. Defendant preserved this issue for appellate review by unsuccessfully moving for a judgment of acquittal at the close of all the evidence.[1] On the basis of the psychological and psychiatric testimony, although conflicting, and of defendant's actions before, during, and after the killing, the Superior Court justice was warranted in finding beyond a reasonable doubt that defendant acted intentionally or knowingly when he shot and killed Diane.

Defendant's numerous threats against his wife's life in the months preceding the shooting are a preliminary indication that

1. Defendant argued on appeal that the Superior Court justice erred in denying his motion to acquit made at the end of the State's case, pursuant to M.R.Crim.P. 29(a). However, assuming *arguendo* that there was error, it is not subject to review by this court because defendant proceeded to offer evidence on his own behalf. We must therefore review the sufficiency of all the evidence in the case taken together, including that offered by the defense and by the State on rebuttal. *State v. Mann*, Me., 361 A.2d 897, 906 (1976).

he intended to do her harm and that he was extremely jealous of Mr. Richard. On the day of the shooting, defendant engaged in a number of everyday activities in a rational, normal manner—he bought a newspaper, gasoline, and milk; he tried to replace a recently broken bathroom tile; he conversed with acquaintances; and he called the babysitter to inquire about his children. The deliberate manner in which defendant carried out the shooting, including leaving his own car in order to walk over to Diane's car to fire one more shot before driving away, is a further indication of intentional behavior. Additionally, in the minutes immediately following the shooting, defendant had the presence of mind to call the police, give them first a fictitious name, describe some of the events of the shooting, and ask for a doctor.

As the factfinder the Superior Court had the responsibility for passing upon the credibility of the conflicting psychiatric testimony and deciding the weight to be accorded thereto. *See State v. Mann*, Me., 361 A.2d 897, 906 (1976). "[C]onsiderable deference must be accorded to the fact finder's determination" on an issue of defendant's mental state. *Cf. State v. Foster*, Me., 405 A.2d 726, 732 (1979). We cannot say that the Superior Court justice erred in finding beyond a reasonable doubt that defendant had the requisite culpable state of mind, namely, that his action in shooting Diane was intentional or knowing.

## II. *The Burden of Proof Regarding the Insanity Defense*

In *State v. Burnham*, Me., 406 A.2d 889 (1979), decided after defendant's conviction below, this court reaffirmed the constitutionality of Maine's statutory provision relating to the defendant's "burden of proving, by a preponderance of the evidence, that he lacks criminal responsibility as described in subsection 1."[2] 17–A M.R.S.A. § 58(3) (Supp.1979); *see State v. Burnham*, *supra* at 892. We also noted the well-established rule that the State is constitutionally required to prove beyond a reasonable doubt the existence of a mental state that is an essential element of the crime charged. *Id.* at 893–95; *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Defendant concedes that this allocation of the burdens of proof does not violate due process of law in a case where a person may specifically intend to commit a crime "even though he may suffer from a mental disease or defect which causes him to formulate such an intent." *State v. Buzynski*, Me., 330 A.2d 422, 429–30 (1974). He claims, however, that in a case such as this where his particular brand of mental defect by definition precludes the capacity to intend to kill, the requirement that he prove his insanity by a preponderance of the evidence has the effect of placing upon him the burden of disproving intent, in violation of the principles declared in *Winship*.

Contrary to defendant's contention, we recognized and answered this very question in *State v. Burnham, supra*. There we stated that a "problem arises only when the mental disease or defect, rather than *causing* the formation of a culpable state of mind, destroys the defendant's capacity to form the intention required for the crime." *Id.* at 894 (emphasis in original). In such cases the factfinder, in either a unitary or a bifurcated trial, must consider any evidence of mental abnormality in order to determine whether a reasonable doubt exists as to the defendant's culpable state of mind at the time of the crime. *Id.* at 894–96. The burden of proof beyond a

2. Sections 58(1) and 58(1–A) read:

§ 58. Mental abnormality

1. An accused is not criminally responsible if, at the time of the criminal conduct, as a result of mental disease or defect, he either lacked substantial capacity to conform his conduct to the requirements of the law, or lacked substantial capacity to appreciate the wrongfulness of his conduct.

1–A. In a prosecution for a crime which may be committed intentionally, knowingly or recklessly, where such culpable state of mind is a necessary element, the existence of a reasonable doubt as to such state of mind may be established by evidence of an abnormal condition of mind.

reasonable doubt on the existence of the requisite mental state rests with the State; it never shifts to the defendant. It is only when and *if* the State has met *its* burden of proving each and every element of the offense, including the necessary *mens rea*, that the factfinder then has to determine whether defendant has met *his* burden of proving by a preponderance that he was not criminally responsible because of mental disease or defect. *See* 17–A M.R.S.A. § 58(1).

Defendant additionally argues that because the trial was held prior to our decision in *Burnham*, the Superior Court justice failed to consider evidence of mental disease or defect in evaluating whether the State had established beyond a reasonable doubt that the killing of Diane Bridges was done intentionally or knowingly. The record clearly refutes defendant's argument. After finding defendant guilty the Superior Court justice, in making detailed findings, considered, as required by 17–A M.R.S.A. § 58(1–A) and later elucidated by *Burnham*, the psychiatric and psychological testimony in determining whether there existed a reasonable doubt of the existence of an intentional or knowing state of mind. Examining the justice's conduct of the trial under the guidelines of *Burnham*, we find no inappropriate findings or conclusions.

### III. *Evidentiary Issues*

Defendant challenges three evidentiary rulings of the Superior Court justice. Two related to the rebuttal testimony of the State's expert, Dr. Jacobsohn, and the third involved attempted impeachment of Robert Richard. All of defendant's challenges are without merit.

#### A. *Dr. Jacobsohn's Testimony*

Upon being called as a rebuttal witness by the State, Dr. Jacobsohn was questioned as to the basis for his expert opinion of defendant's mental condition. Dr. Jacobsohn, a psychiatrist, testified that he had developed his opinion in joint consultation with a clinical psychologist, Dr. Kincaid, who worked with him at the Augusta Mental Health Institute. The data they used came from police investigative reports, a preliminary psychological report prepared by a clinical psychologist employed by the Department of Mental Health and Corrections, Dr. Jacobsohn's 20-minute interview with defendant, and the results of a series of tests administered by Dr. Kincaid. Pursuant to M.R.Evid. 705(b), defense counsel objected to Dr. Jacobsohn's testimony on the grounds that he lacked "a sufficient basis" from his own knowledge to express an opinion and that Dr. Kincaid's testimony was necessary to verify the results of the psychological tests. In rejecting those arguments, the Superior Court justice concluded that the absence of Dr. Kincaid affected only the weight, not the admissibility, of Dr. Jacobsohn's opinion.

The Superior Court justice must have determined that the facts or data relied upon by Dr. Jacobsohn were "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," M.R.Evid. 703, and that defendant failed to make out "a prima facie case . . . that the expert [did] not have sufficient basis for his opinion," M.R. Evid. 705(b). We cannot say that either finding by the court was clearly erroneous. *See Warren v. Waterville Urban Renewal Authority*, Me., 235 A.2d 295, 300 (1967), *cert. denied*, 390 U.S. 1006, 88 S.Ct. 1249, 20 L.Ed.2d 1005 (1968); R. Field & P. Murray, *Maine Evidence* § 703.2 (1976). Defense counsel was allowed unlimited scope in cross-examining Dr. Jacobsohn as to the bases of his opinion, and thus had a full opportunity to discredit his testimony. *See State v. Rogers*, Me., 389 A.2d 36, 38 (1978); *Warren v. Waterville Urban Renewal Authority*, *supra* at 301.

#### B. *Hypothetical Question Posed by Defense*

On recross-examination, defense counsel asked Dr. Jacobsohn whether his opinion would change if, in addition to the tests actually performed at Augusta Mental Health Institute, Dr. Kincaid had given the defendant the Minnesota Multiphasic Per-

sonality Inventory (MMPI) test, and as a result of that test, had informed him that defendant was suffering from an hysterical neurosis, dissociative type. The State objected on the basis of Dr. Jacobsohn's previous testimony that he and Dr. Kincaid had specifically not administered the MMPI test at AMHI because they believed the results from that test would be inconclusive. The court sustained the State's objection, reasoning that Dr. Jacobsohn in forming his opinion had relied upon the results of actual tests performed by Dr. Kincaid and that, if the tests and their results had been different, Dr. Jacobsohn's opinion quite obviously might change. He concluded that it was not "a fair question."

We reject defendant's argument that the Superior Court justice abused his discretion. It is within the discretion of the trial court to determine issues concerning the form and scope of the hypothetical question and the extent of its factual assumptions. *State v. Bunker*, Me., 351 A.2d 841, 844 (1976); *Reid v. Eastern Steamship Co.*, 112 Me. 34, 49, 90 A. 609, 617 (1914). Here Drs. Jacobsohn and Kincaid had decided specifically not to use an MMPI test as part of their examination of defendant. The significance of the MMPI test had already been thoroughly explored by defense counsel through Dr. Bishop. Thus, the Superior Court justice did not abuse his discretion in sustaining the objection to this particular hypothetical question.

### C. *Attempted Impeachment of Mr. Richard*

During cross-examination of the prosecution witness Robert Richard, defense counsel attempted to show that on being arrested on an occasion unrelated to the shooting incident, Mr. Richard had been discovered to be in possession of an illegal drug, contrary to his statement under oath during a deposition in a civil action that he had never used or possessed drugs. The court sustained the State's objection and limited the scope of any questions regarding Mr. Richard's use of drugs to the effect they could have had on the clarity of his observations at the time of the alleged crimes. On appeal defendant claims that under M.R.Evid. 608(b), his counsel was entitled to cross-examine Mr. Richard about a specific instance of recent perjury because it was probative of Mr. Richard's "character for truthfulness or untruthfulness."

There was no error in the Superior Court's ruling. As is stated in Field & Murray, *supra* § 608.2 at 143, the Superior Court justice "should recognize the interests of justice in shedding light on the veracity of the witness but should exercise his discretion under Rule 403 to keep the inquiry within reasonable bounds." Evidence may be excluded under M.R.Evid. 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Here, it was well within the Superior Court justice's discretion to limit the scope of Richard's cross-examination to matters directly bearing on his observations during the crimes allegedly committed by defendant.

## IV. *The Rejection of Manslaughter*

Defendant asserts that the Superior Court justice rejected the alternative of a conviction for manslaughter under 17–A M.R.S.A. § 203(1)(B) [3] because he concluded, defendant claims, that defendant's mental

3. The relevant part of 17–A M.R.S.A. § 203(1)(B) (Supp.1979) reads as follows:

1. A person is guilty of manslaughter if he:

. . . . .

B. Causes the death or another human being under circumstances which would otherwise be murder except that the actor causes the death while under the influence of extreme anger or extreme fear brought about by adequate provocation.

2. For purposes of subsection 1, paragraph B, provocation is adequate if:

A. It is not induced by the actor; and

B. It is reasonable for the actor to react to the provocation with extreme anger or extreme fear, provided that evidence demonstrating only that the actor has a tendency towards extreme anger or extreme fear shall not be sufficient, in and of itself, to establish the reasonableness of his reaction.

condition was not that of a "reasonable man." He thus argues that the Superior Court justice applied an incorrect legal standard by failing to evaluate the reasonableness of defendant's reactions on the day of the shooting in light of the particular circumstances as known to defendant.

Defendant sought no special findings of fact, as he was entitled to do, M.R.Crim.P. 23(c), nor did he urge the justice to state the conclusion of law on which he was rejecting the manslaughter alternative. There is nothing in the record to suggest that the Superior Court justice committed any error whatsoever. We must assume that he properly applied the law laid down by section 203 and determined upon the record as a fact that when defendant killed his wife he was not "under the influence of extreme anger . . . brought about by adequate provocation." 17–A M.R.S.A. § 203(1)(B). On this record the justice was fully justified in making such a finding beyond a reasonable doubt.

V. *The Conviction for Aggravated Assault upon Mr. Richard*

As the State has commendably conceded on appeal, defendant's conviction for the aggravated assault upon Mr. Richard must be vacated. Defendant was indicted for the *attempted* murder of Mr. Richard, in that he "intentionally or knowingly engag[ed] in conduct which, in fact, constituted a substantial step toward the commission of the crime of murder by intentionally or knowingly discharging a loaded firearm at one Robert R. Richard." To prove defendant guilty of attempted murder, it was unnecessary for the State to prove that defendant in fact inflicted any physical injury at all upon Mr. Richard.

Having been charged with attempted murder, defendant could alternatively have been found guilty of any lesser offense necessarily included in that offense as charged. As this court recently reaffirmed:

> To be necessarily included in the greater offense, the lesser offense must be such that it is impossible to commit the greater without having committed the lesser.

*State v. Goodall,* Me., 407 A.2d 268, 279 (1979), quoting *State v. Leeman,* Me., 291 A.2d 709, 711 (1972). Here, the Superior Court justice erred in his apparent belief that aggravated assault, whose "basic ingredient" is the element of bodily injury, is *necessarily* included in the crime of attempted murder as charged here. *See State v. Carmichael,* Me., 405 A.2d 732, 734 (1979); 17–A M.R.S.A. § 208 (Supp.1979). It is possible to commit attempted murder as charged without causing bodily injury, an essential element of the lesser offense of aggravated assault. In contrast to aggravated assault, *attempted* aggravated assault *is* a lesser included offense to attempted murder because the actual consummation of bodily injury is not a requisite element either of attempted assault or attempted murder. *See State v. Howard,* Me., 405 A.2d 206, 212 n. 6 (1979).[4]

The entry must therefore be:

Appeal denied in part and sustained in part.

Judgment of conviction for the murder of Diane Bridges affirmed.

Judgment of conviction for aggravated assault upon Robert R. Richard vacated.

All concurring.

4. We note that for double jeopardy purposes the conviction for aggravated assault constituted an acquittal of attempted murder as charged and also of the lesser included offense of attempted assault. *Jeffers v. United States,* 432 U.S. 137, 150–51, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977); *Brown v. Ohio,* 432 U.S. 161, 166–69, 97 S.Ct. 2221, 2225–27, 53 L.Ed.2d 187 (1977); *Bessey v. State,* Me., 297 A.2d 373, 376–77 (1972).